ROMAN CATHOLIC DIOCESE OF NEWARK, A RELIGIOUS CORPORATION OF THE STATE OF NEW JERSEY, *ET AL*, PLAINTIFFS-RESPONDENTS, v. BOROUGH OF HO-HO-KUS, A MUNICIPAL CORPORATION OF THE COUNTY OF BERGEN AND STATE OF NEW JERSEY, DEFENDANT-APPELLANT, AND CHARLES A. BELTRAMINI AND ELEANOR K. BELTRAMINI, HIS WIFE, *ET AL*, DEFENDANTS-INTERVENORS-APPELLANTS, AND JOHN A. BYREM AND ELEANOR P. BYREM, HIS WIFE, DEFENDANTS-INTERVENORS.

Argued February 7, 1966—Decided May 23, 1966.

212

*Mr. Samuel M. Lyon, Jr.,* argued the cause for appellant Borough of Ho-Ho-Kus; *Mr. Merritt Lane, Jr.,* argued the cause for defendants-intervenors-appellants (*Mr. Elliot A. Lawrence,* on the brief; *Messrs. McCarter & English,* attorneys for defendants-intervenors-appellants).

*Mr. Thomas H. Gassert* argued the cause for respondents (*Mr. Frederick J. Gassert,* of counsel; *Mr. Joseph A. Clarken, Jr.,* on the brief; *Messrs. Gassert and Murphy,* attorneys).

The opinion of the court was delivered

PER CURIAM. Plaintiff seeks to erect a regional high school on lands it acquired for that purpose. The lands are in the highest residential district called R–1. At the time of the purchase the local zoning ordinance permitted the proposed use. The municipality thereafter amended the ordinance to bar all schools, public or private, from the R–1 district, permitting them however in its other three residential districts. This suit followed.

The trial court held the municipality lacked power to bar the proposed school, finding that *L.* 1961, *c.* 138 (*N. J. S. A.* 40:55–33.1)[1] had that effect. So holding, the trial court did not reach the charge that the ordinance was otherwise arbitrary and a denial of due process. We however concluded the statute only forbade discrimination between public and private schools and that, subject to that restraint, municipalities could deal with schools under the zoning power. *Roman Catholic Diocese of Newark v. Borough of Ho-Ho-Kus,* 42 *N. J.* 556 (1964).

---

[1] "No planning or zoning ordinance heretofore or hereafter enacted by any municipality governing the use of land by, or for, schools shall, by any of its terms or provisions or by any rule or regulation adopted in accordance therewith, discriminate between public and private day schools, not operated for profit, of elementary or high school grade."

Accordingly we reversed the judgment. The matter was remanded for consideration of the issue of arbitrariness. In that connection we made particular reference to the municipality's argument before us that it could take into account the tax exemption such schools have. We said (42 *N. J.,* at *p.* 565):

"The substantial issue upon which the trial court made no finding is whether it is arbitrary to bar the use of plaintiff's property for a secondary school. The issue is constitutional insofar as it is claimed that the ban offends due process of law. The issue is also statutory insofar as it involves the question whether the municipality exceeded the statutory authority or departed from state policy. In this connection it is appropriate to comment upon so much of the testimony and argument as stresses the tax implications of the proposed use.

We have held that a municipality may consider revenues in its plan for a well balanced community. *Gruber v. Mayor and Township Committee of Raritan Twp.,* 39 *N. J.* 1, 9–11 (1962). Thus it may provide for industrial or commercial uses which are less demanding in public services than residential uses. It is, however, another matter to bar tax-exempt facilities on the ground that they are financially burdensome by reason of that exemption. The exemption is granted by the State because of the contribution of the exempt facility to the public good. It may be that an exemption will mean a net burden for the taxpayers of a particular municipality, but the municipality must nonetheless abide by state policy. Indeed, our *Constitution of* 1947 expressly preserved the then existing exemptions of real and personal property used exclusively for religious, educational, charitable or cemetery purposes and owned by a nonprofit corporation or association. *Art.* VIII, § I, *par.* 2. And *N. J. S. A.* 40:55–33.1, while not bearing the interpretation given it in the trial court, does serve to evidence the Legislature's concern for nonprofit private schools which furnish elementary and high school education.

No municipality may quarrel with this policy. Hence it may not zone against a private school, place it in one district rather than another, or refuse it a variance on the ground that it is exempt from taxation."

After remand, the parties took additional testimony upon the question whether the amendment was prompted by the tax exemption. The trial court found it was not. The trial court concluded, however, that the amendment was arbitrary and hence invalid. Defendants again appealed, and we certified the matter before argument in the Appellate Division.

 We are satisfied plaintiff did not sustain its burden and hence that the judgment must be reversed.

In finding the ordinance invalid, the trial court, it seems to us, combined several approaches, each of which we are unable to accept. In part, the trial court seems to have been persuaded by decisions elsewhere which are not consistent with our basic conclusion that schools may be excluded from the highest residential district. In part, the trial court seems to have made a *de novo* evaluation of the legislative policy decision upon an inquiry into the zoning considerations. Finally the trial court appears to have tested the validity of the ordinance on the basis of the attributes of the particular parcel plaintiff owns. Basic to that test would be the belief that the Constitution or the zoning statute requires a zoning ordinance to authorize for each parcel every possible use to which it could be devoted.

 As to the last facet, we point out that although a zoning ordinance may be invalid in its impact upon a particular parcel, as where the parcel is zoned into idleness, no one suggests the lands here involved cannot be used for residential purposes. On the contrary, they are ideally suited for that use, and this being so, a constitutional issue does not arise merely because these lands, appropriately zoned for highest residential use, are so extensive or otherwise so featured that a forbidden use might be harbored safely within its perimeter upon some special plan or design. Zoning contemplates the delineation of appropriate districts and the equal treatment of all property within it. The Constitution does not require, nor does the statute require or even permit, a municipality to enact an ordinance which deals separately with every owner's parcel and undertakes to prescribe the uses to which each parcel may be put by reason of its size or situation and the terms upon which each possible use may be made.

 Rather, the statutory vehicle for the accommodation of zoning with individual situations is either a special exception, where the ordinance appropriately so provides, or a variance,

as authorized in *N. J. S. A.* 40:55–39. Here the relevant provision is subsection d which authorizes the board of adjustment to "Recommend in particular cases and for special reasons to the governing body of the municipality the granting of a variance to allow a structure or use in a district restricted against such structure or use," if "such relief can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance." Indeed we said in our first opinion that plaintiff might wish to "seek a variance at this juncture, and if the variance should be denied, litigate the validity of that action along with the attack upon the ordinance itself." (42 *N. J.*, at *p.* 567.)

Plaintiff remains free to apply for a variance. In this connection some observations seem appropriate without in any way intimating an opinion as to the outcome of an application. The educational mission of a regional high school is clearly a "special reason" within the meaning of the statute just cited. *Andrews v. Ocean Twp. Board of Adjustment,* 30 *N. J.* 245 (1959). Hence the question will be whether a sound exercise of discretion requires that the school be permitted. In dealing with that question, the local authorities should consider the State policy favoring such exempt functions and the fact that regional needs must be met somewhere. Unfortunately under present law the tax burden falls upon the single municipality rather than the whole area which is benefited. Yet a variance may not be refused on that account. 42 *N. J.*, at *p.* 566. Consideration should also be given to the limited number of sites available to a charity for the reason that it cannot invoke the power of eminent domain. It would not be amiss to weigh also the circumstance that here the proposed use was authorized by the ordinance at the time plaintiff purchased the property. Finally, and of special importance in deciding whether the property can be put to the proposed use without substantial detriment to the public good and without substantially impairing the intent and purpose of the zone plan and the

zoning ordinance, is the question whether the parcel is of such size and situation that, with suitable conditions, the proposed use will not subject the area to the conditions and influences which were the basis of the original zoning decision to exclude schools from this district. The burden of supplying an adequate buffer would be upon plaintiff, and indeed it would be incumbent on plaintiff to propose specific measures and to demonstrate their sufficiency to that end.

We suggested in our first opinion that the problem might well be committed to a State agency. 42 *N. J.*, at *p.* 565. Meanwhile the reconciliation between the local interests and the needs of private educational projects remains in local hands, there to be exercised, as the Legislature must have intended, with due concern for values which transcend municipal lines.

The judgment in favor of plaintiff is reversed and judgment entered in favor of defendants. No costs.

HALL and SCHETTINO, J. J., concur in result.

HALL, J. (concurring). This litigation actually involves the perplexing problem of the permissible extent of local land use control of regional, tax-exempt institutions—be they private schools of religious or secular sponsorship educating children from more than one municipality, or other beneficial non-governmental educational, religious, charitable, hospital and like institutions the services of which transcend local boundaries.

In treating this problem, the primary frame of reference is that under present law planning and zoning regulation in New Jersey must be confined within municipal lines and each municipality may legislate with substantially no regard for the over-all area of which it is a part. The second frame of reference, well illustrated in this case, is that such facilities necessarily increase in size and number with the density of population and require sizeable tracts of land. In such areas lands at all adequate for facilities of this kind are scarce and becoming more so. They generally do not belong

in commercial or industrial areas and suitable sites are likely
to be found only in sections already zoned for residential use.
Moreover, the availability of appropriate land is even more
restricted by the absence of the power of eminent domain.
On the other hand, there can be no doubt that such institu-
tions have a physical impact on a residential neighborhood
which can be unduly dissonant unless buffers and other con-
ditions are imposed. It is equally true that in almost every
case they cost the municipal taxpayer some money because
they usually create a need for additional governmental in-
stallations and services without any return in the form of
taxes. Furthermore, local residents frequently share in the
benefits of the institutions only to a limited extent and some-
times not at all.

I fear that so far we have come up with little of a con-
structive nature by way of answer to this basic question and
that, as far as the parties in interest in this case are con-
cerned, after five years of litigation we have succeeded only
in marching them up hills and down again, with more of the
same in prospect. This unfortunate result may be due in
part to legal and practical limitations on the judicial func-
tion in problems of this kind, the work-a-day solutions of
which are better handled legislatively and administratively.
Courts in deciding the constitutional and statutory issues
presented in this class of cases cannot go much beyond
establishing outer boundaries of the zoning power and set-
ting forth guide lines to aid proper local implementation of
the power so delineated. I suggest, however, that we have
not gone as far as we can and should in these respects in this
case.

Perhaps what I have to say here might well have been
stated to some extent in connection with the opinion on the
first appeal. 42 *N. J.* 556 (1964). However, the only issue
then decided, by reason of the narrow basis on which the
trial court disposed of the case, was that public schools, and
thus private schools, are in this State within the zoning
power, or at least certain aspects of it, as a matter of legisla-

tive contemplation. The majority felt that the unreached matter of the validity, in the Ho-Ho-Kus setting, of the ordinance amendment prohibiting all schools and other institutional uses except churches and public parks and playgrounds in the highest residential zone should first be determined by the trial court. I did not believe that we were intending to deal definitively with the *extent or implementation* of the power. Two references to that phase of the matter indicated to me that we were suggesting the trial court ought to consider it. The first was in this comment:

"We of course do not mean that the Legislature intended that the governing body may block public education by barring schools throughout the municipality or by relegating schools to areas that are obviously unsuitable. Rather the Legislature found it appropriate to permit the municipality to consider the total needs of the community in all of its zoning aspects to the end that schools will be in appropriate districts and upon plots of ample size and with suitable buffers to contain within the perimeter of the property those influences which could be unduly hurtful to others." (42 *N. J.*, at *p.* 563).

The second was in the following suggestion:

"The matter is remanded for trial of the issue of arbitrariness in the light of the views we have expressed. We should add that if it is held to be unreasonable to bar the proposed use upon a finding that the zoning objective may be readily achieved by appropriate regulation as to plot size, setback, buffers, etc., the municipality should be given an opportunity to legislate to that end." (42 *N. J.*, at *p.* 566).

I did not understand, as the present majority states, that we had decided in the prior opinion the unqualified proposition "that schools may be excluded from the highest residential district."

The trial court on the remand simply found, however, the blanket prohibition of all schools in the R-1 zone to be unreasonable and arbitrary *in toto* on bases which I agree are legally untenable. The practical effect of the decision is to say that, at least in Ho-Ho-Kus, private schools must be permitted at any location in the highest residential district

without any zoning conditions or safeguards. It seems little different in pragmatic result from that which would ensue if the view that the zoning power does not extend to any schools were to prevail.

While Ho-Ho-Kus could permit private schools and other tax-exempt institutions in residential districts without limitation, as many zoning ordinances do and as Ho-Ho-Kus did before the amendment in controversy, I do not think it can be compelled to. The amendment establishes, at the very least, that the municipality no longer wishes to go that far—a choice which I think a court must recognize as matter of law and fact. Not to do so is to follow the line of cases which say, in analogous situations, that such institutions are immune from any police power regulation in the land use control field on the ground that such regulation bears no substantial relation to the promotion of the public health, safety, morals or general welfare of the community because these uses are themselves in furtherance of the public morals and general welfare. See, *e. g., Diocese of Rochester v. Planning Board,* 1 *N. Y.* 2d 508, 154 *N. Y. S.* 2d 849, 136 *N. E.* 2d 827 (*Ct. App.* 1956); *Board of Zoning Appeals of Town of Meridian Hills v. Schulte,* 241 *Ind.* 339, 172 *N. E.* 2d 39 (*Sup. Ct.* 1961); *In re O'Hara's Appeal,* 389 *Pa.* 35, 131 *A.* 2d 587 (*Sup. Ct.* 1957). Such reasoning confuses issues and disregards the long established basis for general police power regulation of all kinds of activities. Just because an institution is thought to be a good thing for the community is no reason to exempt it completely from restrictions designed to alleviate any baneful physical impact it may nonetheless exert in the interest of another aspect of the public good equally worthy of protection. *Cf. Allendale Congregation of Jehovah's Witnesses v. Grosman,* 30 *N. J.* 273 (1959), appeal dismissed 361 *U. S.* 536, 80 *S. Ct.* 587, 4 *L. Ed.* 2d 538 (1960); *School District of Philadelphia v. Zoning Board of Adjustment,* 417 *Pa.* 277, 207 *A.* 2d. 864 (*Sup. Ct.* 1965). Consequently I am in accord that the judgment of the trial court must be reversed.

What is most unsatisfactory to me, however, is that the plaintiff is now left with only the possibility of applying for a use variance for "special reasons" under *N. J. S. A.* 40:55–39d. That possibility may well be illusory indeed, under the current scope of judicial review of municipal administrative action, if the borough board of adjustment denies a recommendation or the governing body disapproves the recommendation in the event one is made. While I think it is safe to say that a court, on an administrative record akin to the present evidence, would sustain the grant of a variance, see *Andrews v. Ocean Township Board of Adjustment,* 30 *N. J.* 245 (1959) ; *Black v. Town of Montclair,* 34 *N. J.* 105 (1961) ; *Burton v. Town of Montclair,* 40 *N. J.* 1 (1963), it is not at all certain that the denial of a variance would be upset. See *Mayer v. Montclair Board of Adjustment,* 32 *N. J.* 130 (1960) ; *cf. St. Cassian's Catholic Church v. Allen,* 40 *N. J.* 46 (1963).

My conviction is that, while a municipality cannot be required to permit tax-exempt institutions at any location without conditions or restrictions, it also may not exclude them from any zone by unqualified prohibition. Rather such institutions should have the right to locate on any appropriate site where the physical impact of their operations can be alleviated to a reasonable extent by the imposition of suitable conditions and restrictions. I have in mind, for example, a tract so situated and large enough to accommodate the projected functions and activities as well as motor vehicle traffic and parking in order that considerable insulation will thereby be created for the benefit of immediate neighbors, together with such additional buffers and restrictions as are needed. In addition, the exterior structural design should not be completely out of keeping with the district, as would be the case of a ten-story building in a high-class one-family area.

My reasons for this view are essentially found in the thesis I advanced in the dissenting opinion in *Vickers v. Township Committee of Gloucester Township,* 37 *N. J.* 232, 252

(1962), which need not be repeated at length. See also discussions in Haar, "Regionalism and Realism in Land-Use Planning," 105 *U. Pa. L. Rev.* 515 (1957); Note, "Churches and Zoning," 70 *Harvard L. Rev.* 1428 (1957); Note, "Zoning Against the Public Welfare: Judicial Limitations on Municipal Parochialism," 71 *Yale L. J.* 720 (1962). Regional or, for that matter, local institutions generally recognized as serving the public welfare are too important to be prevented from locating on available, appropriate sites, subject to reasonable qualifications and safeguards, by the imposition of exclusionary or unnecessarily onerous municipal legislation enacted for the sake of preserving the established or proposed character of a community or some portion of it (which seems to be the principal reason for Ho-Ho-Kus' antipathy to plaintiff's school) or to further some other equally indefensible parochial interest. And, of course, if one municipality can so act, all can, with the result that needed and desirable institutions end up with no suitable place to locate. In my view, such action is not legitimately encompassed by the zoning power and the courts have the power to and should say so. The substantive question seems to me to fall clearly within the following language from the foundation case of *Village of Euclid, Ohio v. Ambler Realty Co.,* 272 *U. S.* 365, 47 *S. Ct.* 114, 119, 71 *L. Ed.* 303, 311 (1926): "It is not meant by this, however, to exclude the possibility of cases where the general public interest would so far outweigh the interest of the municipality that the municipality would not be allowed to stand in the way."

Municipalities greatly prize the New Jersey system of substantial home rule. But it should encompass responsibilities as well as rights and they should not be heard to object that they must take some of the bitter with the sweet when the public good thereby advanced necessarily transcends municipal boundaries. That the particular institution which circumstance brings into the community may cost some additional tax moneys does not dictate a different approach. The next town may well have to undertake a similar burden next year.

If none can exclude, all will be equally subject to the same possibility of bearing the burden.

Methods to deal with the right I would thus recognize can be provided for, it seems to me, in either of two ways. The first would be by advance provision in the zoning ordinance for such uses as special exceptions pursuant to *N. J. S. A.* 40:55–39b. The required ordinance standards therefor would have to be broad enough to give the board of adjustment the necessary flexibility in passing upon and imposing particular conditions in each case. If the ordinance does not so provide, as in the case of Ho-Ho-Kus, the "special reasons" variance under *N. J. S. A.* 40:55–39d ought to be available and adequate, provided the judiciary takes the view, stronger than that presently prevailing, as I think it can and should, that such a variance *must* be granted in appropriate fact situations subject to reasonable conditions prescribed by the local agency. See Cunningham, "Flexible Zoning and the New Jersey Special Reasons Variance Procedure," 15 *Zoning Digest* 169 (1963). (This is in reality the judicial approach followed today with respect to hardship variances under *N. J. S. A.* 40:55–39c, even though the opinions state and purport to follow the same scope of review rule as in cases of use variances. See *Ardolino v. Florham Park Board of Adjustment,* 24 *N. J.* 94 (1957). Note my view as to the proper scope of judicial review of municipal legislative land use regulation action expressed in the *Vickers* dissent, 37 *N. J.,* at *pp.* 258–261, the rationale of which I think is equally applicable to municipal administrative action. I have deep concern about according the same deference to the actions of such agencies as is done in the case of state administrative bodies.)

As far as the present case is concerned, I would require that an application for a variance by the plaintiff be so considered both at the local level and on any judicial review

SCHETTINO, J., joins in this opinion.

FRANCIS, J. (dissenting). I cannot agree with the result reached by the majority for the reasons expressed in my dissent in the original case. 42 *N. J.* 556, 567 (1964).

In his concurring opinion Justice Hall has stated in crystal clear fashion an incidental but significant problem which inheres in controversies like the present one. In capsule form the issue may be expressed as regionalism vs. provincialism, with the latter now firmly ensconced in control as the result of recognition by the majority of my colleagues of the comprehensive zoning power of the local authorities with respect to public and private non-profit schools. And it follows, of course, that so long as such pervasive power continues to be paramount, the public welfare as represented by regional interests or needs will be subordinated to the parochial views of a single municipality. Thus it seemed to me originally, and the view is strengthened now by Justice Hall's observations, that problems arising out of the location of public or private non-profit secondary schools, particularly those designed to serve regional educational needs, should be resolved by the State Board of Education. In my judgment that board has plenary express or implied authority to deal with the subject to the exclusion of district lines established by a municipal zoning ordinance. 42 *N. J.*, at *p.* 570.

Moreover, as the dissent indicated, the power of the State Board would not be exhausted by a simple approval or veto of a secondary school location selected by the school authorities, whether the particular school is to be regional or local in its service. And it is unlikely that local aesthetic considerations would be ignored or that community desires to have the physical impact of the school structure on the neighborhood lessened would be shunted aside. Regulation of such matters as "area of plot in relation to size of school, play yards, sidelines, front and rear setback lines," buffer areas, shrubbing, treeing and the like, is certainly within the implied power of the board, and undoubtedly would be engaged in with due regard for such neighborhood interests. 42 *N. J.*, at *p.* 571.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, PROCTOR, HALL, SCHETTINO and HANEMAN.—6.

*For affirmance*—Justice FRANCIS—1.