228 N.J. Super. 226 (1988)
549 A.2d 469
MEDICAL REALTY ASSOCIATES, PLAINTIFF-APPELLANT AND CROSS-RESPONDENT,
v.
BOARD OF ADJUSTMENT OF THE CITY OF SUMMIT, DEFENDANT-RESPONDENT,
v.
BEACON HILL TOWERS, INC.; ONE EUCLID AVENUE CONDOMINIUM ASSOCIATION; STRATHMORE HOUSE ASSOCIATION, INC.; SUMMIT-PARMLEY CO.; ANN J. LUCAS AND DOROTHY S. HUGHES, DEFENDANTS-RESPONDENTS AND CROSS-APPELLANTS,
v.
CITY OF SUMMIT, THIRD-PARTY DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 11, 1988.
Decided October 27, 1988.
*227 Before Judges PETRELLA, SHEBELL and LANDAU.
Bartholomew A. Sheehan, Jr., argued the cause for appellant and cross-respondent (Dempsey, Dempsey & Sheehan, attorneys; Bartholomew A. Sheehan and James G. Webber, on the brief).
Arthur P. Condon argued the cause for respondent Board of Adjustment of City of Summit.
John Anthony Lombardi argued the cause for defendants-respondents and cross-appellants.
No brief was filed on behalf of third-party defendant-respondent City of Summit.
The opinion of the court was delivered by SHEBELL, J.A.D.
*228 Appellant Medical Realty Associates is a limited partnership which owns property that has been used for the practice of medicine by the Summit Medical Group, P.A. (Medical Group) since 1929. The property consists of seven lots forming three groups: one is the site of the existing Medical Group Building at 120 Summit Avenue; the second parcel is directly across from this structure and is the site for the proposed parking and driveway access; the third is known as 129 Summit Avenue. The latter site was the location of the original Medical Group and presently houses various members of that group. Medical Realty Associates seeks to construct a 45,000 square foot addition to the existing 40,000 square foot building, as well as a 19,000 square foot, two-story parking deck. An application was filed with the Board of Adjustment (Board) which first sought "c" or "hardship" variances, but was amended to include "d" or "special reasons" variances, as the applicants sought to expand a preexisting nonconforming use.[1]N.J.S.A. 40:55D-70c and d. The application was denied, and this appeal and cross-appeal has followed.
In 1964 the Medical Group was granted several variances on the representations that: the building at 129 Summit Avenue would be vacated and disposed of; the number of doctors would not exceed 40, and the number of employees would not exceed 120, with no more than 80 employees on the site at any given time.
In 1979 the Board held a hearing on an application to enlarge medical offices located in the immediate vicinity of the Medical Group. That application was filed by Joseph DiLallo, M.D., and *229 was denied by resolution adopted April 2, 1979. In 1982 the Medical Group purchased DiLallo's lots and also acquired title to two additional lots.
The amended application in the present appeal sought the following variances from Section 4.12 of the Summit Municipal Zoning Ordinance:
(a) Side line with regard to properties fronting on Beechwood Road, with 5 feet proposed in place of the 25 feet required.
(b) Side line regarding properties facing Euclid Avenue, with 5 feet proposed instead of the 25 feet required.
(c) Side yard with regard to properties fronting on DeForest Avenue, with 10 feet proposed instead of the 25 feet required.
(d) Front yard as to Summit Avenue, with a minimum of 3 feet proposed instead of the 35 feet required.
(e) Front yard as to Beechwood Road, with 10 feet proposed instead of the 35 feet required.
(f) Front yard as to Euclid Avenue, with 10 feet proposed instead of the 35 feet required.
(g) Building coverage, 29.2% instead of the maximum of 20% allowed.
(h) Building height proposed at 50 feet instead of the 48 feet required.
In addition, the following parking variances are sought:
(a) 336 spaces are proposed in place of the 666 required.
(b) Of the 336 parking spaces proposed by the applicant, only 76 stalls will be of the full size required by the ordinance (9' X 20').
(c) The proposed parking is to be located in the prohibited side yard and front yard areas throughout the perimeter of the property involved.
(d) In addition, 2 handicapped parking spaces are provided for while 4 are required.
(e) No loading spaces are provided for while 3 such spaces are required by the Zoning Ordinance.
The Board of Adjustment held hearings on this application over a 10-month period and on June 5, 1985, adopted a resolution denying the application. The Board found the applicant had not established "special reasons" under N.J.S.A. 40:55D-70 d and also that the "negative criteria" had not been met. The applicant filed a complaint in lieu of prerogative writ seeking to overturn the Board's decision. The Law Division found that the applicant had established "special reasons," but nonetheless upheld the Board's denial on the grounds that the Board's *230 decision regarding the negative criteria was not arbitrary or capricious. We affirm.
We need not consider whether the applicant showed the "special reasons" required under N.J.S.A. 40:55D-70d. We nonetheless make the following observations regarding the relationship between "special reasons" and the "negative criteria" in view of appellant's position that they are to be balanced by the Board in arriving at a decision on whether to grant relief.
N.J.S.A. 40:55D-70, in relevant part, states the following:
The board of adjustment shall have the power to:
d. In particular cases and for special reasons, grant a variance to allow departure from regulations pursuant to article 8 of this act, to permit: (1) a use or principal structure in a district restricted against such use or principal structure, (2) an expansion of a nonconforming use, (3) deviation from a specification or standard pursuant to section 54 of P.L. 1975, c. 291 (C. 40:55D-67) pertaining solely to a conditional use, (4) an increase in the permitted floor area ratio as defined in section 3.1 of P.L. 1975, c. 291 (C. 40:55D-4), (5) an increase in the permitted density as defined in section 3.1 of P.L. 1975, c. 291 (C. 40:55D-4), except as applied to the required lot area for a lot or lots for detached one or two dwelling unit buildings, which lot or lots are either an isolated undersized lot or lots resulting from a minor subdivision. [Emphasis supplied].
Whether an applicant shows "special reasons" is decided on a case-by-case basis. Kohl v. Mayor and Council of Fair Lawn, 50 N.J. 268, 276 (1967). A distinction is drawn, however, between those proposed uses which inherently serve the public good and those which do not. Where the proposed use does not inherently serve the public good, the applicant has the burden of proving that the use promotes the general welfare because the proposed site is particularly suited for the proposed use. Id. at 279; see Medici v. BPR Co., 107 N.J. 1, 24 (1987).
Both categories of uses, however, must also satisfy the "negative criteria," set out at N.J.S.A. 40:55D-70 as follows:
No variance or other relief may be granted under the terms of this section unless such variance or other relief can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance.
*231 In Baptist Home of South Jersey v. Bor. of Riverton, 201 N.J. Super. 226 (Law Div. 1984), the Law Division held that in situations involving inherently beneficial uses the "positive criteria," i.e., special reasons, must be balanced against the negative criteria. Id. at 246. The court placed this interpretation on the Municipal Land Use Law, even though "[n]o obligation to balance the negative criteria against the positive is mentioned." Ibid. We expressed our disapproval of this holding in Lazovitz v. Board of Adjustment, 213 N.J. Super. 376 (App.Div. 1986) as follows:
Moreover, we disagree with the holding of Baptist Home of South Jersey v. Boro. of Riverton. N.J.S.A. 40:55D-70, by its plain language, requires an applicant for a use variance to establish special reasons and to establish the negative criteria. [Citation omitted]. We are not free, by judicial plastic surgery, to change that plain language. [Citation omitted]. The concepts of special reasons and negative criteria are independent and separate requirements of proof not to be integrated into some kind of balancing test. [Id. at 382-83; emphasis in original].
Appellant terms this language dictum and claims that the "discretionary weighing function" calling for a balance of positive and negative criteria has been entrenched in case law and that in Baptist Home "[w]ithout equivocating, the court surveyed the precedents and expatiated upon the concept of substantiality by elaborating, without change, the concept of the `discretionary weighing function.'"
Baptist Home was a departure from the clear language of N.J.S.A. 40:55D-70. The "discretionary weighing function" was referred to in Yahnel v. Bd. of Adjust. of Jamesburg, in the context of a Board's negative criteria decision:
Plaintiffs challenge the finding of the board that the variance will not substantially impair the intent and purpose of the zone plan and zoning ordinance. The key word here is "substantially." It comes from the statute itself. Obviously, any permission for a nonresidential use in a residential zone may have some tendency to impair residential character, utility or value. But the statutory rationale of the function of the board of adjustment is that its determinations that there are special reasons for a grant of variance and no substantial detriment to the public good or impairment of the zone plan, etc., in such grant represent a discretionary weighing function by the board wherein the zoning benefits from the variance are balanced against the zoning harms. If on adequate proofs the board without arbitrariness concludes that the harms, *232 if any, are not substantial, and impliedly determines that the benefits preponderate, the variance stands. [Yahnel v. Bd. of Adjust. of Jamesburg, 79 N.J. Super. 509, 519 (App.Div.), certif. den. 41 N.J. 116 (1963) (emphasis supplied)].
We do not doubt that the proofs presented for satisfying the special reasons standard may be considered when deciding whether the overall detriment to the public good or impairment of the zoning plan is substantial. This is so because a balancing process takes place of necessity when deciding the negative criteria standard because only by overall consideration of the proposal will a decision be reached as to whether the variance would have substantial detrimental effect on the public good and the zoning plan and ordinance. Prior to Baptist Home, however, no court applied the balancing test, per se, between special reasons and the negative criteria. In Fobe Associates v. Mayor and Council of Demarest, 74 N.J. 519 (1977), the Supreme Court made no determination of special reasons and simply upheld the denial of a variance due to the Board's finding that the grant would substantially impair the zoning ordinance. Id. at 537-38.
The following Supreme Court pronouncement in Medici fortifies this court's holding in Lazovitz v. Bd. of Adj., 213 N.J. Super. 376 (App.Div. 1986).
In the use-variance context, we believe [the court's role] can best be achieved by requiring, in addition to proof of special reasons, an enhanced quality of proof and clear and specific findings by the board of adjustment that the variance sought is not inconsistent with the intent and purpose of the master plan and zoning ordinance. The applicant's proofs and the board's findings that the variance will not "substantially impair the intent and purpose of the zone plan and zoning ordinance," N.J.S.A. 40:55D-70(d), must reconcile the proposed use variance with the zoning ordinance's omission of the use from those permitted in the zoning district. [107 N.J. at 21; emphasis supplied].
Appellant cites Medici, 107 N.J. at 22, n. 12, wherein the Court sets forth the Yahnel language quoted above. However, the Medici Court discusses the Yahnel language in the context of how it affects the Board's evaluation as to the negative criteria:
We intend no change in the proof required to satisfy the first prong of the negative criteria, that the variance can be granted "without substantial detriment to the public good." In this respect the statutory focus is on the *233 variance's effect on the surrounding properties. The board of adjustment must evaluate the impact of the proposed use variance upon the adjacent properties and determine whether or not it will cause such damage to the character of the neighborhood as to constitute "substantial detriment to the public good." See Yahnel v. Jamesburg, supra, 79 N.J. Super. at 519 [quoted above]. [Id. at 22, n. 12].
Appellant's contention that the case must be remanded for a weighing of the special reasons against the negative criteria is without merit.
The Law Division found that "the Board's finding of plaintiff's failure to demonstrate that the variance could be granted without detriment to the public good or substantial impairment to the zone plans and ordinance was not arbitrary, capricious or unreasonable." The trial court recognized that it "may not substitute its independent judgment for that of the board of adjustment." Farrell v. Estell Manor Zoning Bd. of Adj., 193 N.J. Super. 554, 556 (Law Div. 1984). Where a board of adjustment has denied a variance, the plaintiff has the heavy burden of proving that the evidence presented to the board was so overwhelmingly in favor of the applicant that the board's action can be said to be arbitrary, capricious or unreasonable. Kenwood Assocs. v. Bd. of Adj. Englewood, 141 N.J. Super. 1, 4 (App.Div. 1976). The learned trial judge carefully detailed the facts and law in his opinion. We are satisfied that the applicant did not meet its burden of proving that the Board's action was arbitrary and capricious. The applicant failed to demonstrate that the grant of the variance would neither cause detriment to the public good nor substantially impair the zone plan and scheme of the community, especially with regard to traffic congestion, lack of parking, lack of buffering, and a reduction of natural resources and aesthetics in the area.
In view of our holding, we need not consider the contentions of objectors cross-appellants that the Board should have ended the consideration of the Medical Group's application as soon as it realized that "it was the subject of a prior application involving a substantial portion of the identical property and on *234 substantially the same basis of the subject application which was denied."
The judgment appealed from is affirmed.
NOTES
[1] We note that although the resolution of the Planning Board infers that the amendment resulted in only a "d" request being before the Board, nonetheless "c" variances were also still required. In view of our holding, however, we need not consider whether there would have been sufficient basis for granting the other requested variances from the zoning ordinance requirements for setbacks, parking, and the like.