236 N.J. Super. 584 (1989)
566 A.2d 575
HOMES OF HOPE, INC., PLAINTIFF,
v.
MOUNT HOLLY TOWNSHIP ZONING BOARD OF ADJUSTMENT, DEFENDANT.
Superior Court of New Jersey, Law Division Burlington County.
Decided August 10, 1989.
*586 Janet Brownlee Miller for plaintiff (James Logan, Jr., attorney).
Brian M. Guest for defendant (Bookbinder, Guest & Domzalski, attorney).
HAINES, A.J.S.C.
Homes of Hope, Inc. ("Homes") is a non-profit corporation organized by but independent of the First Presbyterian Church of Mount Holly. Its purpose is to provide low cost housing for the poor and homeless. Preventing deterioration of the Church's neighborhood is an incidental concern. This opinion considers Homes' right to a variance permitting the conversion of a single family dwelling, situated near the Church and owned by Homes, into two apartments. It concludes that the variance, denied below, should be granted.
Homes owns three properties containing six dwelling units in the area of the Church. All are used to provide low cost or no cost accommodations to individuals who cannot afford decent housing. The property in question has six bedrooms and can accommodate two families. It has been used by large but single, extended families in the past. It is located in a zone which permits only single family dwellings although nine multi-family dwellings are located within 200 feet.
N.J.S.A. 40:55D-70d permits variances "in particular cases and for special reasons ... to allow ... an increase in the permitted density." "Density" in this context "means the permitted number of dwelling units per gross area of land to be developed." N.J.S.A. 40:55D-4. Section 70d also provides that no variance may be granted unless it "can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning *587 ordinance". An applicant for a "d" variance, in order to be successful, must prove the presence of "positive criteria" and the absence of "negative criteria".
"Inherently beneficial" uses significantly advance the general welfare and therefore automatically satisfy the special reasons-positive criteria requirement. The concept has been recognized in a number of cases. In Kohl v. Mayor & Council of Fair Lawn, 50 N.J. 268 (1967), the court said:
The cases in this Court in which a significant factor has been the contribution of the proposed use for the "general welfare" all have involved uses which inherently served the public good. [citing cases involving schools and a hospital].... In all of the above cited cases the very nature of the use gave rise to special reasons for the grant of a variance, and in those cases we did not require a finding that the general welfare could be best served by locating the proposed use at the specific site in question. [at 279; citations omitted]
In DeSimone v. Greater Englewood Housing Corp. No. 1, 56 N.J. 428 (1970), the court considered an application for a variance which would permit construction of low and moderate income housing. It said:
"Special reasons" is a flexible concept; broadly speaking, it may be defined by the purposes of zoning set forth in N.J.S.A. 40:55-32, which specifically include promotion of "health, morals or the general welfare." So variances have been approved for many public and semi-public uses because they significantly further the general welfare. [at 440]
....
We specifically hold, as a matter of law in the light of public policy and the law of the land, that public, or, as here, semi-public housing accommodations to provide safe, sanitary and decent housing, to relieve and replace substandard living conditions or to furnish housing for minority or underprivileged segments of the population outside of ghetto areas is a special reason adequate to meet that requirement of N.J.S.A. 40:55-39(d) [now N.J.S.A. 40:55D-70(d)] and to ground a use variance. [at 442; emphasis added]
Rolfe v. Borough of Emerson, 141 N.J. Super. 341 (Law Div. 1976), lists a number of cases dealing with inherently beneficial uses. Among them is DeSimone, the use in which is so described. Id. at 355. In Medical Realty v. Board of Adjustment of the City of Summit, 228 N.J. Super. 226 (App.Div. 1988), the court said:

*588 Whether an applicant shows "special reasons" is decided on a case-by-case basis. [citing Kohl] A distinction is drawn, however, between those proposed uses which inherently serve the public good and those which do not. Where the proposed use does not inherently serve the public good, the applicant has the burden of proving that the use promotes the general welfare because the proposed site is particularly suited for the proposed use. [at 230]
The Supreme Court, in DeSimone, well in advance of present day housing and homeless crises, recognized that the furnishing of housing for "minority or underprivileged segments of the population" inherently served the public welfare. In Brunetti v. Mayor and Council of the Twp. of Madison, 130 N.J. Super. 164, 168 (Law Div. 1974), the court said: "A need for low and moderate-income housing constitutes a special reason justifying a zoning variance, whether served by semi-public housing as in DeSimone or by private housing as proposed by plaintiff."
Homes of Hope's variance request meets the "inherently beneficial" criteria. The creation of housing accommodations for the underprivileged at a reduced cost makes an important contribution to the general welfare. Homes' plan, in operation, adds considerably to that contribution. The plan involves members of the community not only in the management of the non-profit corporation, but also directly in efforts to improve the lives of its tenants through practical counselling. This private, independent undertaking reflects values of the highest order. To say that they satisfy the "positive criteria" needed to support the grant of a variance is to describe Homes' contribution very modestly indeed.
The fact that DeSimone and Brunetti involved large multi-unit housing projects while Homes proposes the establishment of only two housing units makes no difference. Homes' modest solution of local housing problems offers the same inherent benefit as does a solution involving a large housing project. Arguably, since a small project involves much less change than a large one, has much less impact upon a given neighborhood and can be replicated throughout a community, it is the better of the two in terms of the general welfare.
*589 DeSimone, in identifying low cost housing as an inherently beneficial use, referred only to "public" and "semi-public" housing. Homes is a non-profit private corporation. As Brunetti suggests, however, the difference between a public and a private use in the present setting is of no importance. Encouragement of the private resolution of the acute social problem of the homeless may be more important to the community than dependence upon a public response. Homes, as a private housing enterprise, addresses the same need as a public one. The public-private differences consist primarily of money sources and the measure of public control. There is no need, however, to weigh the advantages of one over the other. It is enough to note the availability of substantial arguments supporting both approaches.
Furthermore, Homes may wear the "semi-public" label used in DeSimone. It is a non-profit corporation, regulated by state and federal statutes, subject to municipal ordinances and the supervision of local officials. Its purpose  to provide low cost housing  is a public purpose. One of its three properties is under contract with the federal Department of Housing and Urban Development which certifies prospective recipients of assistance. It serves the public when it serves the poor and clearly satisfies the positive criteria test.
It is, nevertheless, necessary for Homes to satisfy the negative criteria of the statute. Thus, in Lazovitz v. Bd. of Adjustment, 213 N.J. Super. 376, 382-83 (App.Div. 1986), the court held that "N.J.S.A. 40:55D-70, by its plain language, requires an applicant for a use variance to establish special reasons and to establish the negative criteria.... The concepts of special reasons and negative criteria are independent and separate requirements of proof not to be integrated into some kind of balancing test." In Medici v. BPR Co., 107 N.J. 1, 21 (1987), the Supreme Court held that "[i]n the use-variance context, we believe [the court's role] ... can best be achieved by requiring, in addition to proof of special reasons, an enhanced quality of proof and clear and specific findings by the board of adjustment *590 that the variance sought is not inconsistent with the intent and purpose of the master plan and zoning ordinance...." (emphasis supplied) See also Medical Realty, (228 N.J. Super. 226 (App.Div. 1988)).
The resolution of the zoning board stated the following as the only reasons for denying the variance:
By permitting this conversion the two (2) units would be a detriment to the neighborhood and increase the density in the neighborhood in an already dense population.
This area is very congested and it would be a detriment.
Obviously, the conversion of a single unit dwelling into two units increases density as that word is defined in the Municipal Land Use Law. The conclusion that the conversion would be a "detriment" is little more than a conclusion. Sifting through the record as well as the findings of the Board, it becomes apparent that the major concerns were parking and traffic. Other concerns to which neighbors testified were the fact that Homes would pay no property taxes, that undesirable people would occupy the dwelling, that drug problems existed in the community, that conversion would lower property values and that the dilapidated condition of numerous properties in the area made the conversion undesirable.
Homes proposed a solution to the parking problem: the Presbyterian Church was prepared to dedicate two parking spaces on its parking lot to the use of the tenants of the proposed apartments. The dedication would be permanent. It offered an improvement of the general parking problem in the area and clearly answered objections to any parking problem caused by the conversion of the dwelling. The Zoning Board, by virtue of its authority to impose conditions upon variances, could have insured the availability of the offered spaces. Nash v. Morris Twp. Bd. of Adj., 96 N.J. 97 (1984). Instead, its resolution ignored this parking solution.
The Board's denial of the variance based on density and congestion in the neighborhood must be read as a finding that Homes did not satisfy the negative criteria. That finding was *591 proper, however, only if the granting of the application would cause "substantial detriment to the public good" and would "substantially impair the intent and purpose of the zone plan and zoning ordinance". N.J.S.A. 40:44D-70d. The evidence runs in the other direction. Nine multi-unit houses are located within 200 feet of the property. Some houses in the zone are too large to be maintained affordably as one-family dwellings. It was shown that the work being done by Homes in renovating and renting its properties was improving the neighborhood. Homes, being non-profit, pumped the money earned in its housing operations back into dwelling improvements.
In Medici, the Supreme Court emphasized the need to satisfy the negative criteria before the grant of a variance could be sustained. In saying so, however, it added:
We intend no change in the proof required to satisfy the first prong of the negative criteria, that the variance can be granted "without substantial detriment to the public good." In this respect the statutory focus is on the variance's effect on the surrounding properties. The board of adjustment must evaluate the impact of the proposed use variance upon the adjacent properties and determine whether or not it will cause such damage to the character of the neighborhood as to constitute "substantial detriment to the public good." [107 N.J. at 22, fn. 12]
It is apparent in the present case that the proposed conversion of the dwelling offers the opportunity for its physical improvement. The character of the neighborhood is one that now accommodates numerous apartments. There was no demonstration in the record that the conversion would have a negative effect on property values and no such finding was made by the Board. Thus the first prong of the negative criteria was satisfied.
Satisfying the second prong of the negative criteria is more difficult. Medici has changed the law with respect to variances for uses which are not inherently beneficial; it requires, "in addition to proof of special reasons, an enhanced quality of proof and clear and specific findings by the board of adjustment that the variance sought is not inconsistent with the intent and purpose of the master plan and zoning ordinance...." 107 *592 N.J. at 21. Before Medici a balancing approach was used when considering whether the variance would "substantially impair the intent and purpose of the zone plan and zoning ordinance"; zoning benefits were balanced against zoning harms. Yahnel v. Bd. of Adj. of Jamesburg, 79 N.J. Super. 509, 519 (App.Div. 1963). Questions, however, remain when an inherently beneficial use is at stake. In Medici, the Supreme Court carefully restricted its holding to uses which are not inherently beneficial, saying at the beginning of its opinion:
This case invites our reconsideration, for the first time since Kohl v. Mayor of Fair Lawn, 50 N.J. 268 (1967), of the factors that should guide a municipal board of adjustment considering a use-variance application for a commercial use that does not "inherently serve the public good." Id. at 279.
....
We now reaffirm the holding in Kohl that if the use for which a variance is sought is not one that inherently serves the public good, the applicant must prove and the board must specifically find that the use promotes the general welfare because the proposed site is particularly suitable for the proposed use. In addition, in view of the 1985 amendments to the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -112, set forth in N.J.S.A. 40:55D-89, -89.1 (requiring periodic review by the governing body of master plans and zoning ordinances and establishing a presumption of unreasonableness for ordinances not so reviewed) and N.J.S.A. 40:55D-70.1 (requiring annual reports by boards of adjustment of variance requests and recommendations for ordinance revisions), we deem it appropriate to require an enhanced quality of proof, as well as clear and specific findings by the board of adjustment, that the grant of a use variance is not inconsistent with the intent and purpose of the master plan and zoning ordinance. [107 N.J. at 3-4 footnote omitted]
It is therefore not clear that the Medici standards apply to a proposed use which is, like the present one, inherently beneficial.
The problem of inherently beneficial use variances and the negative criteria was emphasized by Justice Hall in his concurring opinion in Roman Catholic Diocese of Newark v. Ho-Ho-Kus Boro., 47 N.J. 211 (1966). It was his concern that any strict reading of the statutory negative criteria requirements would support denial of most inherently beneficial uses despite their importance to the public. Id. at 223. He believed that special reasons variances "must be granted [for an inherently *593 beneficial use] in appropriate fact situations subject to reasonable conditions prescribed by the local agency." Id. at 224. If the Medici standards apply to an inherently beneficial use, Justice Hall's concern has become a present day reality.
My reading of Medici requires the conclusion that it does not apply to an inherently beneficial use. It was the intention of the Supreme Court, as the opening words of its opinion emphasize, to limit its holding to other uses. The riddle presented by the inherently beneficial use variance has not been solved. Justice Hall's suggestion is not law. The formula adopted in Baptist Home of South Jersey v. Bor. of Riverton, 201 N.J. Super. 226 (Law Div. 1984), has been rejected by the Appellate Division though not the Supreme Court. Lazovitz, 213 N.J. Super. at 382-383. Medical Realty, 228 N.J. Super. at 232. We are left with the law in existence pre-Medici. Thus, a balancing test, as recognized in Yahnel, is to be applied in addressing the negative criteria. Yahnel held:
Plaintiffs challenge the finding of the board that the variance will not substantially impair the intent and purpose of the zone plan and zoning ordinance. The key word here is "substantially." It comes from the statute itself. Obviously, any permission for a nonresidential use in a residential zone may have some tendency to impair residential character, utility or value. But the statutory rationale of the function of the board of adjustment is that its determinations that there are special reasons for a grant of variance and no substantial detriment to the public good or impairment of the zone plan, etc., in such grant represent a discretionary weighing function by the board wherein the zoning benefits from the variance are balanced against the zoning harms. If on adequate proofs the board without arbitrariness concludes that the harms, if any, are not substantial, and impliedly determines that the benefits preponderate, the variance stands. [79 N.J. Super. at 519; emphasis added]
Lazovitz apparently scorns any balancing test. 213 N.J. Super. at 382-383. Nevertheless, in Medical Realty (decided after Lazovitz and Medici and quoting the latter), the Appellate Division, while disagreeing with the application of "the balancing test, per se, between special reasons and the negative criteria" in Baptist Home, said:
We do not doubt that the proofs presented for satisfying the special reasons standard may be considered when deciding whether the overall detriment to the public good or impairment to the zoning plan are substantial. This is so *594 because a balancing process takes place of necessity when deciding the negative criteria standard because only by overall consideration of the proposal will a decision be reached as to whether the variance would have substantial detrimental effect on the public good and the zoning plan and ordinance. [228 N.J. Super. at 232; emphasis added]
I conclude that the balancing test, as described in Yahnel and Medical Realty, is the test to apply here and one which Homes easily meets.
The inherently beneficial aspects of Homes' proposed conversion satisfy the positive criteria and clearly preponderate over negative concerns about traffic and congestion. The addition of one more dwelling unit to the neighborhood is, at best, of modest concern. Parking problems which troubled some witnesses can be resolved by the dedication of parking spaces in the Church's parking lot. There was no proof that the conversion would make any significant addition to existing traffic. Objections by witnesses who anticipated drug problems, undesirable tenants and tax losses are speculative and inappropriate. Zoning benefits outweigh zoning harms. The granting of the variance will not "substantially impair the intent and purpose of the master plan and zoning ordinance."

CONCLUSION
Homes' application satisfies all requirements for the granting of the requested variance. Its denial was therefore arbitrary. The matter is remanded to the Board of Adjustment for its consideration of any reasonable conditions which may be imposed upon the variance which must be granted. The consideration of conditions must take place in the course of a public meeting of the Board.