587 A.2d 661

DR. ROBERT B. SICA, PLAINTIFF–RESPONDENT, v. BOARD OF ADJUSTMENT OF THE TOWNSHIP OF WALL, DEFENDANT–APPELLANT, AND TOWNSHIP OF WALL, MONMOUTH COUNTY, A MUNICIPAL CORPORATION OF NEW JERSEY, TOWNSHIP COMMITTEE OF THE TOWNSHIP OF WALL, AND PLANNING BOARD OF THE TOWNSHIP OF WALL; DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued January 8, 1991—Decided March 6, 1991.

---

Before Judges MICHELS, BRODY and D'ANNUNZIO.

*Thomas J. Hirsch* argued the cause for appellant (*Crawford & Hirsch,* attorneys).

*Richard J. Byrnes* argued the cause for respondent (*Wilentz, Goldman & Spitzer,* attorneys).

The opinion of the court was delivered by

D'ANNUNZIO, J.A.D.

The Board of Adjustment of the Township of Wall (Board) denied plaintiff's application for a use variance to construct and operate, in a residential zone, a 40–bed residential facility for the rehabilitation of head trauma victims. In an action in lieu of prerogative writs, the Law Division reversed the Board and granted the variance. The Board appeals from that judgment, and we now reverse.[1]

Plaintiff subdivided the 5.45 acre lot upon which he proposes to build the facility from a 32 acre tract which he owns. The lot is in the township's R–60 zone in which the permitted uses are farming, single family dwellings, public parks, playgrounds, municipal buildings and facilities and services essential to the operation of the township. Certain conditional uses were permitted when plaintiff filed the variance application. They included home professional offices, places of worship, public, parochial and private schools, golf courses and country clubs.

Prior to May 11, 1988, hospitals and nursing homes had been permitted conditional uses in the R–60 zone. On March 1, 1988,

---

[1]This action was consolidated with a separate action filed by plaintiff in which he attacks an amendment to the zoning ordinance upon which the Board relied in denying the variance. To the extent that this appeal may be interlocutory, we now grant leave to appeal *nunc pro tunc.*

plaintiff applied for a conditional use permit. On May 11, 1988, the governing body amended the zoning ordinance to eliminate hospitals and nursing homes as permitted conditional uses. Consequently, plaintiff's conditional use application was dismissed and plaintiff was required to seek a use variance.

*N.J.S.A.* 40:55D–70d. empowers a board of adjustment to grant use variances for "special reasons," the affirmative criteria. In addition, the applicant must establish that the variance "can be granted without substantial detriment to the public good," the first element of the negative criteria, and only if it "will not substantially impair the intent and the purpose of the zone plan and zoning ordinance," the second element of the negative criteria.

In denying the application, the Board focused on the second element of the negative criteria. The Board specifically and expressly relied on *Medici v. BPR Co.,* 107 *N.J.* 1, 526 *A.*2d 109 (1987), and concluded that the applicant had not established that the variance would not "substantially impair the intent and the purpose of the zone plan and zoning ordinance." *N.J.S.A.* 40:55D–70d. Paragraphs 55, 56 and 57 of the Board's resolution state:

55. The Board, pursuant to the dictates of the *Medici* case, is obligated to determine whether or not the removal of nursing homes and hospitals from residential zones by the amendment to the zoning ordinance was meant to include a prohibition against the type of use proposed by applicant. As noted in *Medici*, a reconciliation of a nonpermitted use with the zoning ordinance becomes increasingly difficult when the governing body has been made aware of prior applications for the same use variance but has declined to revise the zoning ordinance. In this case, it is not a question of the governing body declining to revise the zoning ordinance, but a question of them taking specific action to amend the zoning ordinance to prohibit a particular use.

56. The Board has already pointed out the testimony of applicant concerning the differences between the proposed use and a nursing home. The Board finds that there are some differences between the proposed use and what is traditionally termed a nursing home, however the Board also finds that it was the intent of the governing body to also preclude the type of use which is the subject matter of this application when it amended the zoning ordinances to preclude hospitals and nursing homes. At the time of the amendment to the zoning ordinance, this application was before the Planning Board, and was considered a permitted use under the general heading of nursing homes.

Therefore, in light of the fact that the proposed amendment to the zoning ordinance had to be sent to the Planning Board for their recommendation and the Planning Board recommended the adoption of this ordinance, and the fact that the Mayor and one other member of the committee sit on the Planning Board, the Board comes to the inescapable conclusion that the governing body intended to exclude applicant's type of use from residential zones at the time it amended the zoning ordinance.

57. Based on this finding, the Board cannot reconcile the grant of this variance with the prohibition of this use from the zoning ordinance. The Board further finds that the applicant certainly has not carried its burden of an, "enhanced quality of proof" that the variance sought is not inconsistent with the intent and purpose of the master plan and zoning ordinance.

The Board also concluded that the applicant did not establish the first element of the negative criteria. However, it did not rule on the affirmative criteria because of its rejection of the application on negative criteria grounds. Although the Board was satisfied that the proposed use promoted the general welfare, *see Kohl v. Mayor and Council of Fair Lawn*, 50 *N.J.* 268, 234 *A.*2d 385 (1967), the Board appeared to reject plaintiff's contention that his lot was particularly suited to the proposed use. In paragraph 59, the Board stated:

The Board specifically finds that applicant did not demonstrate that this type of development had to be in a residential area. Applicant indicated the pastoral setting, the proximity to the airport, proximity to Jersey Shore Medical Center, and to a county road were all important aspects of this location. The Board finds that all those elements can be met in other zones of the Township which are non-residential in character. The Township is only 50% developed and there are many areas where all those criteria are available which will not impact on established residential neighborhoods.

Whether the proposed use is inherently beneficial, thereby satisfying the affirmative criteria without a showing of the site's particular suitability, *see Kohl, supra* at 279, 234 *A.*2d 385; *DeSimone v. Greater Englewood Housing Corp. No. 1*, 56 *N.J.* 428, 440, 267 *A.*2d 31 (1970); *Kunzler v. Hoffman*, 48 *N.J.* 277, 286, 225 *A.*2d 321 (1966), was characterized by the Board as a "close question," which the Board did not answer.

We assume for purposes of this opinion, that the proposed use is inherently beneficial and, therefore, that the applicant satisfied the affirmative criteria. *Cf. Jayber, Inc. v. Municipal Council*, 238 *N.J.Super.* 165, 174–175, 569 *A.*2d 304 (App.Div.

1990) (congregate care facility for senior citizens is an inherently beneficial use satisfying the affirmative criteria). Our focus, as was the Board's, is on the second element of the negative criteria.

The Legislature has vested discretionary authority in boards of adjustment to grant or deny variance applications. *Kramer v. Bd. of Adjust., Sea Girt*, 45 *N.J.* 268, 296, 212 *A.*2d 153 (1965). A board's denial of a variance is presumed to be valid, and may be reversed only if a board's action was arbitrary, capricious or unreasonable. *Id.* at 296, 212 *A.*2d 153; *Charlie Brown of Chatham v. Bd. of Adjust.*, 202 *N.J.Super.* 312, 321, 495 *A.*2d 119 (App.Div.1985). In *Kramer*, the Court expanded on the rationale underlying these principles:

> Such public bodies, because of their peculiar knowledge of local conditions must be allowed wide latitude in the exercise of delegated discretion. Courts cannot substitute an independent judgment for that of the boards in areas of factual disputes; neither will they exercise anew the original jurisdiction of such boards or trespass on their administrative work. So long as the power exists to do the act complained of and there is substantial evidence to support it, the judicial branch of the government cannot interfere. A local zoning determination will be set aside only when it is arbitrary, capricious or unreasonable. Even when doubt is entertained as to the wisdom of the action, or as to some part of it, there can be no judicial declaration of invalidity in the absence of clear abuse of discretion by the public agencies involved. (Citations omitted.)

*Kramer, supra*, 45 *N.J.* at 296–297, 212 *A.*2d 153.

In the present case, the Board applied the principles announced in *Medici* where the Court recognized "a strong legislative policy favoring zoning by ordinance rather than by variance." *Medici, supra*, 107 *N.J.* at 23, 526 *A.*2d 109; *see also Feiler v. Fort Lee Bd. of Adj.*, 240 *N.J.Super.* 250, 255–256, 573 *A.*2d 175 (App.Div.1990); *Chesterbrooke Limited Partnership v. Planning Bd. of Tp. of Chester*, 237 *N.J.Super.* 118, 567 *A.*2d 221 (App.Div.1989). In *Medici*, the Court addressed the second element of the negative criteria. In doing so, it reviewed the changes in New Jersey land use statutes effected by the Municipal Land Use Law (MLUL). *L.*1975, *c.* 291; *N.J.S.A.* 40:55D–1 *et seq.* Those changes included the grant of full authority to boards of adjustment to grant use variances,

*N.J.S.A.* 40:55–70(d); the requirement that zoning ordinances be consistent with the master plan, *N.J.S.A.* 40:55D–62(a); the requirement that planning boards review and report on the master plan and zoning ordinance every six years, *N.J.S.A.* 40:55D–89; and the requirement of annual reports by boards of adjustment on those zoning ordinance provisions involved in variance applications, *N.J.S.A.* 40:55D–70.1. *Medici, supra,* 107 *N.J.* at 18–20, 526 *A.*2d 109.

After reviewing those changes, the Court described their significance to the variance process.

> The specific legislative changes in our statutes regulating land use and zoning reflect significant policy decisions by the legislature concerning the proper relationship between use variances and zoning ordinances. The power to grant use variances has been shifted from the governing body, whose responsibilities include enactment of the zoning ordinance, to the board of adjustment. This shift of authority undoubtedly reflects the legislature's determination that boards of adjustment possess special competence to decide use-variance applications, and that absent an appeal no participation by the governing body is necessary. However, delegation of the authority to grant use variances to boards of adjustment increases the likelihood that such variances may conflict with the intent of the master plan and zoning ordinance to a greater extent than was the case when the power to grant them was vested in the governing body. Tension between use variances and the zoning ordinance and master plan is less likely in those municipalities that authorize appeals from the grant of use variances to the governing body.

*Id.* at 19–20, 526 *A.*2d 109.

The Court also noted the significance to the variance process of an informed governing body's inaction.

> Thus, the mandatory re-examination by the planning board of the master plan and zoning ordinance, at least every six years, is intended to inform the governing body of the need for revisions in the plan and ordinance based on significant changes in the community since the last such re-examination. Similarly, the annual reports by boards of adjustment summarizing variance requests throughout the year and recommending amendments to the zoning ordinance are designed to avoid successive appeals for the same types of variance by encouraging the governing body to amend the ordinance so that such appeals will be unnecessary. *When an informed governing body does not change the ordinance, a board of adjustment may reasonably infer that its inaction was deliberate.* [Emphasis supplied.]

*Id.* at 20–21, 526 *A.*2d 109.

The Court concluded that satisfaction of the second element of the negative criteria required "an enhanced quality of proof

and clear and specific findings by the board of adjustment that the variance sought is not inconsistent with the intent and purpose of the master plan and zoning ordinance." *Id.* at 21, 526 *A.*2d 109. Based on the applicant's proofs, a board must "reconcile the proposed use variance with the zoning ordinance's omission of the use from those permitted in the zoning district." *Id.* The Court noted, however, that "[r]econciliation on this basis becomes increasingly difficult when the governing body has been made aware of prior applications for the same use variance but has declined to revise the zoning ordinance." *Id.* at 21–22, 526 *A.*2d 109.

In *Medici,* the Court emphasized the significance of a governing bodies' inaction. In the present case, the governing body *acted,* in the face of plaintiff's conditional use application, to eliminate hospitals and nursing homes as permitted conditional uses. Its action was consistent with a recommendation by the township's planner. The Board inferred from the governing body's action that "the governing body intended to exclude applicant's type of use from residential zones." We conclude that this inference was supported by the record.[2] Indeed, it was compelled. Based on this inference, the Board determined that it could not reconcile the grant of the variance with the recent deletion of hospital and nursing homes from residential zones.

We are satisfied that the Board properly applied *Medici. Medici* instructed the Board to determine "that the governing body's prohibition of the proposed use is not incompatible with a grant of the variance. If the board cannot reach such a conclusion, it should deny the variance." *Id.* at 23, 526 *A.*2d 109. The record does not support a conclusion that the Board acted arbitrarily, capriciously or unreasonably when it determined that it could not reconcile granting the variance with the

---

[2] Plaintiff's contention that his proposed use is not a hospital or nursing home is without merit.

recently expressed local legislative intent. To the contrary, the Board stayed within the boundaries of its role as defined in *Medici*. *See Kenwood Assoc. v. Bd. of Adj. Englewood*, 141 *N.J.Super.* 1, 4, 357 *A*.2d 55 (App.Div.1976) (where board denies a variance, applicant, to overturn board action, must establish that the evidence in support of the variance is overwhelming).

 We reject plaintiff's contention that *Medici*'s requirements for satisfying the second element of the negative criteria are not applicable to a variance based on an inherently beneficial use.[3] In making this contention, plaintiff relies in part on Judge Haines' opinion in *Homes of Hope v. Zoning Bd. of Adj.*, 236 *N.J.Super.* 584, 566 *A*.2d 575 (Law Div.1989). We disagree with and reject *Homes of Hope*. In part, that opinion relied on "the opening words" of *Medici* as limiting "its holding to other uses." *Homes of Hope, supra* 236 *N.J.Super.* at 593, 566 *A*.2d 575. This convenient reliance on *Medici*'s "opening words" ignores the fact that *Medici* addressed two major issues of variance law. The first issue, which the "opening words" addressed, was the continuing viability of *Kohl v. Mayor of Fair Lawn, supra*, regarding satisfaction of the affirmative criteria for uses that do not inherently serve the public good. *Medici*, which overturned a variance to build a motel, reaffirmed *Kohl* in this regard. *Medici, supra* 107 *N.J.* at 4, 526 *A*.2d 109.

The second issue *Medici* addressed dealt with the negative criteria in light of the 1985 amendments to the MLUL. *Medici* clearly stated that the requirement it was announcing with regard to the negative criteria "will apply in *all* use—variance cases." (Emphasis supplied.) *Id.* at 4–5, 526 *A*.2d 109.

---

[3]In *Medici*, the Court acknowledged that undue hardship, *i.e.*, economic inutility would also satisfy the affirmative criteria. 107 *N.J.* at 17, n. 9, 526 *A*.2d 109. Whether *Medici*'s negative criteria principles apply with all their vigor to such a case is not before us.

Moreover, *N.J.S.A.* 40:55D–70d. does not exempt inherently beneficial uses from the requirement of satisfying the negative criteria. We perceive no rational basis for diluting the *Medici* negative criteria requirements merely because a use is inherently beneficial. Many uses inherently serve the public good, including privately owned commercial uses. *See Alpine Tower v. Mayor & Council,* 231 *N.J.Super.* 239, 249, 555 *A.*2d 657 (App.Div.1989) (radio transmission tower); *Yahnel v. Bd. of Adjust. of Jamesburg,* 79 *N.J.Super.* 509, 518, 192 *A.*2d 177 (App.Div.) (telephone service center), *certif. denied* 41 *N.J.* 116, 195 *A.*2d 15 (1963). Despite their beneficial impact, they may also be grossly incompatible with a municipality's zoning ordinance and master plan. The negative criteria, particularly the second element, provide a necessary mechanism to control the potential for variances to subvert land use planning. That potential exists even if a proposed non-permitted use is inherently beneficial.

Although a board of adjustment must consider the characteristics of a proposed use and its planning impact in applying the negative criteria, the affirmative and negative criteria "are independent and separate requirements of proof not to be integrated into some kind of balancing test." *Lazovitz v. Board of Adjust.,* 213 *N.J.Super.* 376, 383, 517 *A.*2d 486 (App.Div.1986). *Cf. N.J.S.A.* 40:55D–70c(2) (authorizing the grant of a variance, other than a use variance, if its benefits "would substantially outweigh any detriment"). *Medici* lays to rest any suggestion, *see, e.g. Yahnel, supra,* 79 *N.J.Super.* at 519, 192 *A.*2d 177, that the more beneficial a proposed use is, the less significant is the *second element* of the negative criteria. *Cf. Medical Realty Associates v. Bd. of Adjust., City of Summit,* 228 *N.J.Super.* 226, 231–232, 549 *A.*2d 469 (App. Div.1988). This type of balancing is reserved to the local legislature when it enacts and amends the zoning ordinance. Our holding in this case, including our determination that *Medici* is applicable to inherently beneficial use variances, is

consistent with the policy underlying *Medici:* the Legislature's preference for zoning by ordinance, rather than by variance.

Reversed.