**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-3562-18T3
      A-3611-18T3

RENAISSANCE BEVERAGES
III LLC, d/b/a GORMAN'S WINES
& SPIRITS, AWAZ INC, d/b/a
SEARS, FGM FITNESS, LLC, d/b/a
NORTH BEACH HEALTH CLUB,
RA WIRELESS OF NJ LLC, CA
COOPER LLC, d/b/a H & R BLOCK,
ITALIAN AFFAIR OF NORTH
CAPE MAY INC., d/b/a ITALIAN
AFFAIR PIZZA & PASTA,
LEE HING ENTERPRISES INC.,
d/b/a ASIAN PALACE, and
YOZU INC.,

  Plaintiffs-Appellants,

v.

TOWNSHIP OF LOWER
PLANNING BOARD
and ACME MARKETS, INC.,

  Defendants-Respondents.

_____

BAYSHORE MALL 1A, LLC,
BAYSHORE MALL 1B, LLC, and
BAYSHORE MALL 2, LLC,

Plaintiffs-Appellants,

v.

TOWNSHIP OF LOWER
PLANNING BOARD and ACME
MARKETS, INC.,

Defendants-Respondents.

Argued telephonically May 27, 2020 –
Decided July 9, 2020

Before Judges Yannotti and Currier.

On appeal from the Superior Court of New Jersey, Law
Division, Cape May County, Docket Nos. L-0030-18
and L-0038-18.

Elias T. Manos argued the cause for appellants
Renaissance Beverages III LLC, FGM Fitness, LLC,
RA Wireless of NJ LLC, CA Cooper LLC, Italian
Affair of North Cape May Inc., Lee Hing Enterprises
Inc., and Yozu Inc. (Manos Law Firm, LLC, attorneys;
Elias T. Manos, on the joint briefs).

Christopher M. Baylinson argued the cause for
appellants Bayshore Mall 1A, LLC, Bayshore Mall 1B,
LLC, and Bayshore Mall 2, LLC (Perskie Mairone Brog
Barrera & Baylinson, attorneys; Christopher M.
Baylinson, on the joint briefs).

Gerald E. Burns (Buchanan Ingersoll & Rooney, PC) of
the Pennsylvania bar, admitted pro hac vice, argued the
cause for respondent Acme Markets, Inc. (Buchanan
Ingersoll & Rooney, PC, attorneys; Christopher James
Dalton, on the brief).

2

Avery S. Teitler argued the cause for respondent Township of Lower Planning Board (Teitler & Teitler, attorneys; Avery S. Teitler, on the brief).

PER CURIAM

The controversy in these consolidated cases arises out of the Lower Township Planning Board's (Board) approval of Acme Market Inc.'s application to create an outdoor display area and construct additional signage. Acme leases its premises located within the Bayshore Mall shopping center. The Bayshore Mall entities,[1] and eight of its tenants[2] that lease commercial properties in the shopping center, appealed the Board's decision.[3] The trial court affirmed the Board's decision in a March 11, 2019 order and decision. After a review of the arguments advanced on appeal in light of the record and applicable principles of law, we affirm.

---

[1] Bayshore Mall is owned by three tenants in common: plaintiffs Bayshore Mall 1A, LLC, Bayshore Mall 1B, LLC, and Bayshore Mall 2, LLC (Bayshore).

[2] We refer to plaintiffs Renaissance Beverages III, LLC d/b/a Gorman's Wines & Spirits, FGM Fitness, LLC d/b/a North Beach Health Club, RA Wireless of NJ, LLC, CA Cooper, LLC d/b/a H & R Block, Italian Affair of North Cape May, Inc. d/b/a Italian Affair Pizza & Pasta, Lee Hing Enterprises, Inc. d/b/a Asian Palace, and Yozu, Inc. collectively as "Tenants."

[3] We refer to Bayshore and the Tenants collectively as "plaintiffs."

A-3562-18T3

Acme has been a tenant in the shopping center since 1988. For several years prior to these events, Acme operated an outdoor display area in front of its store. However, in February 2017, Lower Township issued a citation to Acme as the outdoor displays violated a municipal ordinance, Section 400-17(E)(3) of the Lower Township Land Development Code (Code). The ordinance only permitted garden centers and stores that sold vehicles and boats to have an outside display.

Thereafter, in April 2017, Acme filed an application with the Board seeking minor site plan approval and variance relief, under Section 400-17(E)(3), to create two outdoor display areas outside each of the store's entrance and exit doors. Acme also sought variance relief for additional signage.

During a hearing in July 2017, the Board heard testimony from representatives of Acme, Bayshore, and one of the Tenants; Bayshore and the tenant objected to the application. In a three to three split vote on the variance requests, the Board denied Acme's application.

A week later, Acme filed a second application seeking similar relief and addressing the concerns expressed by the Board during the first hearing. Acme reduced the proposed area and height for the outdoor displays and established

4

an ADA-compliant[4] pedestrian sidewalk in front of them. It also revised the proposed sign package, seeking a variance for three additional LED channel letter signs for the westward facing wall of the building: (1) a 58.5 square foot "Acme" sign; (2) a 6.8 square foot "Liquor" sign; and (3) a 9.7 square foot "Pharmacy" sign. In addition, Acme proposed a 126 square foot glass-applied graphic sign depicting produce.

The Board considered Acme's second application at a hearing on October 19, 2017. Prior to the hearing, the Board's engineer, Shawn A. Carr, P.E. (professional engineer), reviewed the application and prepared a report to the Board noting the differences between the two applications. Lower Township's Bureau of Fire Safety also reviewed Acme's second application and issued a letter of approval.

During the hearing, Acme presented testimony from the following witnesses: Lewis Conley, P.L.S. (professional land surveyor), P.P. (professional planner); William Crosby, Acme's Vice President of Operations; and Patrick Malia, a licensed code official and expert on code compliance. In opposing the application, Bayshore produced: Bryan Proska, P.E.; Edward Eimer, R.A. (licensed architect); Richard Carter, P.E., P.P; Scott Homel, Bayshore's

---

[4] Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 to 12213.

principal; and Victor Fabietti, the owner of Renaissance Beverages III, LLC d/b/a Gorman's Wines & Spirits.

The Board also heard testimony from Carr and Lower Township's planning director, William J. Galestok, A.I.C.P. (certified planner), P.P. Numerous exhibits were entered into evidence, including a packet of fifty-four photographs of other outdoor display areas in Lower Township.

Conley told the Board that Acme intended the outdoor display areas to include various seasonal items such as flowers, plants, mulch, patio and beach gear, coolers, charcoal, pumpkins, lawn decorations, firewood, and snow shovels. Conley testified the displays would provide an "aesthetic enhancement" to the shopping center and would not be visible to the public from the road. He conceded a six-foot-high display under the eight-foot overhang could result in "some reduced lighting."

Eimer, in turn, contended the proposed displays could present a safety issue by blocking the pathway in front of the store, and it would be difficult to maintain the ADA-compliant walkway. He also noted some of the merchandise items were combustible. Homel and Fabietti shared Eimer's safety concerns. Carter testified that the shopping center's planning should be uniform and if

Acme could have outdoor displays, every tenant might seek a variance for outdoor merchandise contrary to the zoning plan.

In addressing Acme's signage variance request, Conley testified that the three signs proposed for the western side of the building would promote the free flow of traffic and help direct motorists towards additional parking. Conley also noted the glass-applied graphic sign promoted safety because it would hide a money handling area within the store and block "an unsightly partition."

In contrast, Proska stated the signs were not visible to motorists until after they passed the entrance to the shopping center. He also testified the signs could confuse motorists into believing there was parking and an entrance at the rear of Acme.

At the conclusion of the hearing, the Board voted separately on the sign variance, the outdoor display variance, and the minor site plan approval. The Board approved all three measures in votes of: (1) six to one for the sign variance; (2) four to three for the outdoor display variance; and (3) four to three for the minor site plan approval. The Board's decision was adopted in a Resolution on December 14, 2017.

In voting on the signage variance, a Board member who voted "yes" stated the signs would "improve the overall look of the store," stating channel signs

were "neat" and "clean." Another voted "yes" because the signs would help summertime tourists unfamiliar with the area.

The members in favor of granting the variance thought the graphic sign in the front of the building would make the store more aesthetically appealing in contrast to the current blank wall. They commended the channel signs as informational, advising consumers there was a pharmacy and liquor store inside the Acme. The sole Board member who voted "no" stated he did not believe adding the sign to the side of the building would help Acme "grow" and suggested landscaping as a way to "beautify the side of the building."

During the vote on the outdoor display area, one of the Board members who voted "yes" recognized that although other tenants might request similar variances, granting the variance here was "good for the community." He contrasted it to the "dead" strip mall across the street. Another Board member voted "yes" because he felt adding delineated lanes for customers exiting the store and marking the placement of pallets offered a "workable solution." Among the Board members who voted "no," one stated he did not think the pros outweighed the cons regarding the ADA issue. Another Board member voted "no" because he felt the proposed display area was more of a detriment to the community because it posed a safety issue.

A-3562-18T3

In the adopting Resolution, the Board made the following findings in granting the variances, including:

Display Areas Variance under [Section] 400-17(E)(3)

. . . .

[T]his type of outside display area is prevalent throughout Lower Township and a common trend with supermarkets such as Acme.

The . . . outside display areas will provide an aesthetically pleasing area in front of the Acme store.

The . . . outside display areas will "liven up" the shopping center and eliminate the dead area in front of the Acme store which will advance the purposes of zoning including promoting the general welfare including providing for good civic design and a desirable visual environment.

[A]cme has been displaying items for sale in this area previously.

Because of heavy landscaping around the shopping center in which the Acme is located, the outside display area will not be generally visible including to those driving along the adjacent roads. As such, the outside display area will not cause a substantial detriment to the zone plan or public good. Moreover, the display areas will be located under the building overhangs and between building columns and in defined areas with a maximum height of [six] feet (excluding hanging flowers and the like), reducing any potential for a negative impact.

As a result, the Board finds that the Application has satisfied the positive and negative criteria for the granting of the requested variance relief under . . . the Ordinance.

Specifically, the Applicant has indicated enough detail with regard to the layout of the outside display areas and agreed to delineate areas where the merchandise would be sold which will reduce or eliminate any detriment to the granting of the requested relief.

Additionally, the Applicant has agreed to maintain two (2) ADA compliant walkways as a condition of approval.

The revised Application provided enough specificity and information to allow for the granting of the requested variance relief to allow for the outdoor display area.

As a result of the above, the Board finds that the Applicant has satisfied the positive and negative criteria necessary for granting the requested variance under . . . the Ordinance.

Sign Variances

. . . .

The Board finds that the proposed signs on the [side] wall . . . of the Acme, which is currently without any signage, will permit better identification of the store for customers that enter the shopping center from the [w]est.

The Board further finds that the proposed signs will enhance traffic safety and circulation, especially for summertime visitors who are not familiar with the area.

The Board further finds that the channel letter signs are clean and will improve the overall look of the building.

The Board further finds that the channel letter signs will provide a more desirable visual environment by breaking up a blank wall and making the building look more appealing and that this aesthetic enhancement alone supports the grant of relief. The proposed signs on the side wall constitutes a very small percentage of the overall area of the side wall.

The Board further finds that the glass[-]applied graphic sign on the front of the store window will provide a safety feature by hiding an area of the building where money is being counted and stored. Moreover, the sign does not include any words or direct business identification but rather will be a graphic of fruit or similar items. While technically meeting the definition of a sign, the proposed graphic is more decorative in nature.

As a result, the Board finds that several purposes of zoning will be advanced by the granting of the sign variances.

The Board further finds that the granting of requested relief will not be a substantial detriment to the zone plan or zoning ordinance because the side wall signs are attractive, small in area (less than [seventy-five] square feet) and provide architectural relief to an otherwise blank wall while also providing information on the available products in the shopping center and the location of such uses for visitors new to the area that enter from the side entrance to the shopping center.

Therefore, the Applicant has satisfied the [(c)(2)] standard necessary to grant [the] requested variance relief . . . .

The Tenants and Bayshore filed complaints in lieu of prerogative writs against the Board and Acme seeking to overturn the Board's decision. Plaintiffs asserted the Board did not adequately address the positive and negative criteria in granting the variances, erred in voting on an issue of res judicata and failed to consider the "flexible sign criteria."

On March 11, 2019, the trial court issued a comprehensive written opinion affirming the Board's decision and dismissing the complaints. The court stated:

> [E]ach element of the statutory criteria is specifically addressed in Resolution 17-33 and supported by testimony and evidence presented at the October . . . hearing. The Board's separate comments show careful and deliberate consideration of the application. The testimony and comments of Board members, taken together with Resolution 17-33, demonstrates that there is more than enough support to conclude that the Board acted in line with the statutory criteria. The [c]ourt is particularly impressed with the detailed findings included in the Resolution outlining the basis for the granting of relief. The Resolution carefully outlines the special reason[s] or positive criteria for the granting of the relief and the Resolution also carefully addresses the negative criteria. The Board properly concluded that granting the variance would not be a substantial detriment to the public good and that it will not substantially impair the intent and the purpose of the zone plan and zoning ordinance.
>
> At the July hearing, the Board voiced concerns regarding various aspects of the plan. These concerns led Acme to file the [second] application addressing the concerns raised by the Board. Acme's [second]

12

application increased safety measures, the creation of two ADA walkways and conditions imposed on the outdoor display areas. Acme also significantly reduced the total square footage of the proposed signage. At the October hearing, the Board heard Acme's full presentation and Bayshore's full opposition. They asked pertinent questions throughout the hearing. Board members articulately provided reasons for their vote[s]. The Resolution later issued by the Board mirrored the reasoning provided at the hearing. For all these reasons outlined in this opinion, the [c]ourt is satisfied that the decision of the Board was not arbitrary, capricious, or unreasonable.

The court then turned to a specific analysis of the requested variances, addressing the outdoor display first:

The [Board] relied on the expert testimony of Mr. Conley in finding that the outdoor display areas would provide aesthetic enhancement to Acme . . . and the Shopping Mall. The Board also relied on the [fifty-four] photographs that Acme submitted into evidence of other outdoor displays in Lower Township, indicating a pattern of outdoor display in the community. The Board found the testimony of Mr. Conley credible and made findings consistent with his testimony. The Board also considered all of the evidence presented and properly adopted a resolution granting the variance for the outdoor displays. Another significant factor that the Board found important was that Acme filed a second application addressing the concerns raised by the Board members at the hearing for their initial application. The Board found that said amendments and changes reduced the impairment to the zone plan and zoning ordinance; supporting a finding of the Board that the new application posed little to no impairment to the zone plan or zoning ordinance. The

13

Board found that the negative, as well as the positive criteria, were satisfied. The resolution outlines multiple findings supporting the granting of the variance for the outdoor displays. For all the reasons outlined in this opinion, the [c]ourt affirms the [Board's] granting of a (c)(2) variance for outdoor displays.

In considering plaintiffs' arguments regarding the signage, the court stated:

In Resolution 17-33 [the] Board cites several purposes of zoning that were met when they granted Acme signage variance relief. [The] Board found that "the proposed signage would promote the general welfare, provide for efficient and free flow of traffic and create a more aesthetically pleasing environment."

The . . . Board found Acme's requested variance relief to install three additional signs adding to a total of 201 square feet of additional signage on the store building that occupies approximately 5.8 acres of the Shopping Mall to be de minimis based on the size of the proposed signs compared to the size of the wall and the building. [T]he proposed signage would only cover 1.7% of the area of the wall for a store in a 41.96-acre shopping center. The Board found three separate purposes of zoning that were met by the final plan and application. The Board also concluded that the signs would enhance [traffic] safety and circulation and provide a more desirable visual environment. The Board also found significant that Acme substantially reduced the size of the proposed signs. This [c]ourt holds that the Board's decision was sufficiently based on the evidence presented at the hearing. This [c]ourt affirms the decision of the Board in granting Acme's application for variance relief for additional signage.

14

In considering and rejecting plaintiff's assertion that the Board should have considered the "flexible sign criteria," the court noted the Board's engineer had not raised this issue during his review of the variances. The court found the Board's decision to base its decision on the applicable municipal ordinances was not arbitrary, capricious or unreasonable. The court denied the complaint in lieu of prerogative writs.

On appeal, plaintiffs contend the trial court erred in affirming the Board's decision to grant Acme variance relief because it was arbitrary, capricious and unreasonable. In addition, plaintiffs assert the Board improperly considered evidence outside of the record in granting variance relief for the outdoor display area.

In reviewing a zoning board's decision, we are governed by the same standard used by the trial court. Bd. of Educ. of Clifton v. Zoning Bd. of Adjustment of Clifton, 409 N.J. Super. 389, 433-34 (App. Div. 2009) (citing Cohen v. Bd. of Adjustment of Borough of Rumson, 396 N.J. Super. 608, 614-15 (App. Div. 2007)). "Ordinarily, when a party challenges a zoning board's decision through an action in lieu of prerogative writs, the zoning board's decision is entitled to deference." Kane Props., LLC v. City of Hoboken, 214 N.J. 199, 229 (2013). Therefore, a court "should not disturb the discretionary

decisions of local boards that are supported by substantial evidence in the record and reflect a correct application of the relevant principles of land use law." Lang v. Zoning Bd. of Adjustment of N. Caldwell, 160 N.J. 41, 58-59 (1999).

"[T]he action of a board will not be overturned unless it is found to be arbitrary and capricious or unreasonable . . . ." Dunbar Homes, Inc. v. Zoning Bd. of Adjustment of Twp. of Franklin, 233 N.J. 546, 558 (2018) (alteration in original) (quoting Grabowsky v. Twp. of Montclair, 221 N.J. 536, 551 (2015)). "A board acts arbitrarily, capriciously, or unreasonably if its findings of fact in support of [its decision] are not supported by the record, . . . or if it usurps power reserved to the municipal governing body or another duly authorized municipal official . . . ." Ten Stary Dom P'ship v. Mauro, 216 N.J. 16, 33 (2013) (citations omitted) (first citing Smart SMR of N.Y., Inc. v. Fair Lawn Bd. of Adjustment, 152 N.J. 309, 327 (1998); and then citing Leimann v. Bd. of Adjustment of Cranford, 9 N.J. 336, 340 (1952)).

Here, Acme sought a variance for an outdoor display area and additional signage under N.J.S.A. 40:55D-70(c)(2). Our Supreme Court has stated that:

> [N]o [(c)(2)] variance should be granted when merely the purposes of the owner will be advanced. The grant of approval must actually benefit the community in that it represents a better zoning alternative for the property. The focus of a [(c)(2)] case, then, will be not on the characteristics of the land that, in light of current

16

zoning requirements, create a "hardship" on the owner warranting a relaxation of standards, but on the characteristics of the land that present an opportunity for improved zoning and planning that will benefit the community.

[Kaufmann v. Planning Bd. for Warren, 110 N.J. 551, 563 (1988) (emphasis in original).]

In addition, "[n]o variance . . . may be granted under [N.J.S.A. 40:55D-70(c)(2)] . . . without a showing that such variance . . . can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance." Lang, 160 N.J. at 57 (citing N.J.S.A. 40:55D-70(d)).

Acme failed to present sufficient evidence to support its application. In discussing the outdoor display, Conley testified the application met the positive criteria of N.J.S.A. 40:55D-70(c)(2) because the "outside display areas will 'liven up' the shopping center and eliminate the dead area in front of the . . . store which will advance the purposes of zoning . . . ."

In the Resolution, the Board found the outdoor display areas would provide an aesthetic enhancement to Acme and the shopping center. The enhancement of the aesthetics of a property is a valid purpose of zoning under the Municipal Land Use Law. See N.J.S.A. 40:55D-2(i). In addition, several of

17

the Board members favorably commented on their personal observations of the outdoor displays.

The Board also found the outdoor display areas met the negative criteria of N.J.S.A. 40:55D-70(c)(2) because Acme displayed items in the area in the past and the landscaping around the shopping center would help shield the display areas from being visible to the traveling public. These findings were supported by the evidence. Moreover, the evidence revealed numerous other outdoor displays in place in the municipality. Therefore, there is sufficient credible evidence in the record to support the Board's finding that the outdoor displays proposed by Acme would not substantially impair the intent of the municipality's zoning plan.

In granting Acme the variance for its proposed additional signage, the Board found the signs met the positive and negative criteria for variance relief because "the proposed signs will enhance traffic safety and circulation, especially for summertime visitors who are not familiar with the area." The Board also found the signs would enhance the aesthetics of the shopping center by covering blank spaces on walls and windows. In addition, the graphic sign was more decorative in nature than the typical signage.

 A-3562-18T3

In the Resolution, the Board concluded that granting the requested relief would not be a substantial detriment to the zoning plan or ordinance

> because the side walls are attractive, small in area . . . and provide architectural relief to an otherwise blank wall while also providing information on the available products in the shopping center and the location of such uses for visitors new to the area that enter from the side entrance to the shopping center.

As the trial court noted, Acme presented numerous expert witnesses who presented testimony on the issues before the Board and included fifty-four photographs of other outdoor display areas in the municipality. The Board also issued a detailed Resolution supporting its grant of Acme's application. In considering the "wide latitude" we afford to the Board's findings, we are satisfied plaintiffs have not met their "heavy burden of proving that the evidence presented to the [B]oard was so overwhelmingly in [their] favor . . . that the [B]oard's action can be said to be arbitrary, capricious or unreasonable." Advance at Branchburg II, LLC v. Branchburg Twp. Bd. of Adjustment, 433 N.J. Super. 247, 253, 255 (App. Div. 2013) (first quoting Medici v. BPR Co., 107 N.J. 1, 23 (1987); and then quoting Med. Realty Assocs. v. Bd. of Adjustment, 228 N.J. Super. 226, 233 (App. Div. 1988)).

Plaintiffs argue, for the first time on appeal, that the Board improperly relied on evidence outside the record in reaching its decision, referring to the

fleeting reference made by two Board members to a certain Acme employee. This issue was not raised before the trial court, and therefore is not properly before this court. See State v. Galicia, 210 N.J. 364, 383 (2012). Moreover, it is clear from a review of the transcripts that the Board members reached their individual decisions based on the evidence and testimony in the record. The offhand reference to the employee was not a basis for the grant of Acme's application. See Kramer v. Bd. of Adjustment, 45 N.J. 268, 284 (1965).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3562-18T3