**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3954-21

AMERICAN OUTDOOR
ADVERTISING, LLC,

    Plaintiff-Respondent,

v.

EDISON TOWNSHIP
ZONING BOARD OF
ADJUSTMENT,

    Defendant-Appellant.

_____

Submitted October 18, 2023 – Decided December 4, 2024

Before Judges Vernoia and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-3765-21.

Bhavini Tara Shah, LLC, attorneys for appellant (Robert J. Cardonsky, of counsel; Bhavini Tara Shah, on the briefs).

DiFrancesco, Bateman, Kunzman, Davis, Lehrer & Flaum, PC, attorneys for respondent (Jeffrey B. Lehrer, of counsel and on the brief; Susan F. Bateman, on the brief).

The opinion of the court was delivered by

VERNOIA, J.A.D.

The Edison Township Zoning Board of Adjustment appeals from an order reversing its April 27, 2021 resolution denying plaintiff American Outdoor Advertising, LLC's application for preliminary and final site plan approvals, a N.J.S.A. 40:55D-70(d)(3) conditional use variance, a N.J.S.A. 40:55D-70(d)(6) height variance, and other N.J.S.A. 40:55D-70(c) bulk variances permitting construction of a two-sided, 110-foot tall, digital billboard on property located in an L-I—light industrial—zone under applicable Edison Township ordinances. The court's order also remanded the matter to the Board for entry of a resolution granting plaintiff's application based on the plans plaintiff had submitted and subject to any conditions to which plaintiff had agreed during the Board proceedings. We vacate the court's order and remand for further proceedings before the Board.

I.

The Board's Hearing of Plaintiff's Application

Plaintiff is in the business of building and operating billboards. It leased a portion of Block 7, Lot 49 in Edison Township for the purpose of constructing a digital billboard on the property. The property is in an L-I zone that is located

near Interstate Route 287. Individuals traveling in their vehicles on that roadway are the billboard's target audience.

The Edison municipal ordinance governing the L-I zone provides that a billboard requires a fifteen-foot setback and is limited to one sign face, 250 square feet of "sign area," and fifteen feet of "sign height."[1] Plaintiff applied to the Board for the variances because plaintiff's proposed billboard is V-shaped with two digital signs, each with a 672-square-foot sign area, and with a height of 110 feet, more than seven times the ordinance's fifteen-foot height restriction. Plaintiff also sought a variance from the ordinance's fifteen-foot-setback requirement; plaintiff proposed a five-foot setback for the billboard.

The Board conducted two public hearings on the application. We briefly summarize the testimony presented to provide context for the issues presented on appeal.

Plaintiff called Alex Zepponi, a licensed professional engineer and planner, as a witness. Zepponi testified the billboard would be "essentially almost identical" in size and height to a nearby auto dealer's billboard. Zepponi conceded the auto dealer's billboard is static and not "a digital billboard."

---

[1]  The requirements and limitations are set forth in Township of Edison municipal ordinance sections 37-62.11b.3(a) and (b).

Zepponi testified plaintiff's billboard would have an eight-second "flip time," meaning the digital messages and advertisements on the billboard would change every eight seconds. Zepponi explained an eight-second flip time is "standard in the industry."

Zepponi testified the requested variance for the proposed billboard's larger sign-face area—672 square feet of sign area for each of the two digital signs instead of the 250 square feet permitted under the ordinance—because the billboard "is an outdoor advertising type structure" directing messages at passing motorists who need to view the information displayed on the billboard "at safe timings" and at "a longer read distance." Zepponi explained the variance for the 110-foot height of the billboard is necessary because Interstate 287 is at a higher elevation than the property at Block 7, Lot 49, and there is "a 12-foot sound wall" between the property's location and Interstate 287. Zepponi testified there would be "no pollution . . . [d]irectly generated by this [bill]board]" and the billboard's presence would have "no real impact" on traffic.

Timothy Stauning, a managing member of plaintiff, testified there are similarly-sized billboards along Interstate 287, citing an auto-dealer's static billboard that is located about one-and-one-third miles from the site of plaintiff's proposed billboard. Stauning also testified the New Jersey Department of

4

Transportation (NJDOT) approves and allows billboards with one-thousand-square-foot sign faces adjacent to interstate highways and those billboards are "considerably" larger than the 672-square-foot sign face areas for each of the digital signs that comprise the billboard for which plaintiff sought the variance. Stauning explained the NJDOT had approved the one-and-one-third-mile distance between plaintiff's proposed billboard and the auto-dealer's billboard.

According to Stauning, a billboard with a 672-square-foot sign face is "standard size in the industry." He also explained that an "eight-second flip" time for the display of different messages is standard "around the country," with some states allowing four-second flip times. Stauning showed the Board a video simulation "of an eight-second flip time." Stauning further testified plaintiff is "committed to public service and, . . . state government and local governments will have instant access to the emergency messaging capabilities" on the proposed billboard.

Ray Digby, a "project manager" at Watchfire Signs, prepared a report regarding the light that will be generated by the proposed billboard. Digby testified "the [billboard's] sign would become unreadable" outside a "70 degree[] [angle] in each direction of the lighting cone" around the billboard. Digby testified the billboard would use Watchfire's "newer technology, called light

5

blocking louvers," to "block[] the light or narrow[] . . . the viewing cone" to "stop[] glare" and produce "better viewability" for the sign. As explained by Digby, the light-blocking louver technology is a "prototype[]" in "the beginning stages" of "real application[.]"

Digby played for the Board a video simulation of the light-blocking louver technology. According to Digby's discussion of the video simulation, residents of the nearby neighborhood "would see a small bit of light if they looked in th[e] direction" of the billboard but "[t]here wouldn't be any glare on their windows" from the billboard.

Plaintiff also called William Wyrick, a Watchfire Signs's representative, as a witness. He explained Watchfire "manufactur[es] digital screens" and testified the proposed billboard included a patent-pending technology "which reduces the cone of light or the viewing angle" of the billboard to "30 degrees to the left and 30 degrees to the right." Wyrick testified the "technology will restrict the viewing area" for the messages displayed on the billboard. He presented a video demonstration of how "the light[-]blocking technology [a]ffects your viewing angle" at various locations surrounding the billboard. Wyrick opined there would be "zero visibility of the sign to residents" in the

neighborhoods nearby Interstate 287. Wyrick testified this would be true "even during daylight hours."

Justin Taylor, an engineer "[p]racticing traffic planning for over [twenty] years," also testified in support of plaintiff's application. He testified about the manner in which drivers observe billboards they pass on the highway and opined the billboard would "not create safety hazards." Taylor further opined that an "eight-second flip" between messages on a digital billboard does not create any special "detriment" to traffic safety.

Plaintiff also presented Christine Nazzaro-Cofone, a licensed professional planner, as a witness in support of the application. Nazzaro-Cofone testified the proposed billboard promoted the general welfare by providing public-service and emergency notices. She also testified the new technology incorporated into the billboard will prevent the individuals living in the nearby residential neighborhood from suffering any impact from the light generated by the digital billboard.

She further noted that plaintiff had obtained a permit from the State to construct on the property a billboard larger than the one that had been proposed. Nazzaro-Cofone explained that the height of the billboard was required due to the thirty-foot downward grade from Interstate 287 to the property, the twelve-

foot sound wall that bordered Interstate 287, and the tall trees located along the roadway.

Eight members of the public who live near the site of the proposed billboard testified in opposition to plaintiff's application. During their brief testimony, each witness generally testified the billboard would be unsightly, would result in glare on their homes from the billboard's lighted displays, and would reduce local property values without any corresponding benefit to the community.

Lois Tarr, a local science teacher, noted that the opinions of plaintiff's expert witnesses concerning the glare and light that would be projected onto the homes in the nearby residential area rested on simulations of technology that had not been "proven" by actual use. Donald Tarr questioned the utility of the emergency messaging function proposed by Stauning, asserting the purported function was redundant because the Township had in use other emergency messaging techniques, including text messages on cellphones. Erica Leeson opined plaintiff's proposed digital billboard "was a very poor parallel" to the existing static auto dealer's billboard. Neil Armstrong questioned whether light from plaintiff's proposed billboard would be refracted on "foggy nights" into the nearby residential neighborhood. Ronnie Loeffler noted "[t]here are . . . no

other LED signs near residential areas that [plaintiff's] experts have shown." The remaining public commenters raised general aesthetic and property-value concerns.

Following the presentation of the testimony and evidence, a Board member moved to deny plaintiff's application. The Board voted unanimously in favor of the motion and denied plaintiff's application.

In its resolution, the Board detailed the procedural history of plaintiff's application and summarized the testimony of the witnesses. The resolution also set forth the Board's findings and conclusion that plaintiff "had failed to justify" its request for the variances under N.J.S.A. 40:55D-70, tersely stating the following:

> [Plaintiff] had not demonstrated that the requested relief could be granted without substantial detriment to the zone plan, zoning ordinance, and the surrounding area for that particular site. The Board concluded that the [application] failed to meet all the negative and positive criteria required to grant the variances. The [p]roject's setbacks, height requirements, lighting and operational hours made the use significantly negative for the site and the technology presented failed to convince that there would be no light pollution. Additionally[,] the location adjacent to a residential neighborhood made it unsuitable for the site where the residents would be subjected to glare. The size and intensity of the project would harm the quality of life

9

for the residents and the commercial properties adjacent
to this sign.[2]

The Trial Court's Decision On Plaintiff's Challenge To The Board's Resolution

Plaintiff filed a complaint in lieu of prerogative writs challenging the Board's denial of the application. Following a trial on the record presented to the Board, the court issued a lengthy written decision reversing the Board's decision, finding it was arbitrary, capricious, and unreasonable. The court entered an order remanding the matter to the Board and directing the Board's adoption of a resolution approving plaintiff's application, granting plaintiff's requests for a conditional-use variance, height variance, and bulk variances and for preliminary and final site plan approvals.

In its written decision supporting the order, the court summarized the parties' arguments and the evidence presented at the hearing before the Board. The court also summarized the legal principles applicable to applications for

---

2 In its brief on appeal, the Board relies on comments made by one of its members in support of the motion to deny plaintiff's application as setting forth the Board's factual determinations. We do not consider statements made in connection with, or in support of, a motion because our review of the Board's action is limited to the findings and conclusions set forth in its resolution. See N.Y. SMSA L.P. v. Bd. of Adjustment of the Twp. of Weehawken, 370 N.J. Super. 319, 333 (App. Div. 2004) (explaining "[i]t is the resolution, and not the board member's deliberations, that provides the statutorily required findings of fact and conclusions" supporting the grant or denial of a variance).

A-3954-21

conditional-use and other variances under N.J.S.A. 40:55D-70, noting that to establish its entitlement to the variances plaintiff was required to present evidence satisfying the positive criteria and two-prongs of the negative criteria under the standard established by the Supreme Court in Coventry Square v. Westwood Zoning Board of Adjustment, 138 N.J. 285 (1994).

Briefly stated, under the Court's decision in Coventry Square, to obtain a conditional-use variance under N.J.S.A. 40:55D-70(d)(3), an applicant must prove "special reasons," referred to as the positive criteria. Id. at 298. The applicant must also prove the two prongs of the negative criteria under the statute: "the variance can be granted 'without substantial detriment to the public good'" and "the variance will not 'substantially impair the intent and purpose of the zone plan and zoning ordinance.'" Id. at 299 (quoting N.J.S.A. 40:44D-70(d)).

The court reasoned that the Board's denial of plaintiff's application was arbitrary, capricious, and unreasonable because it was rendered "without sufficient evidentiary foundation." The court found the Board had ignored the "preponderating, uncontroverted and substantial credible evidence" that the court found had established the positive and negative criteria. The court also noted that although the Board was entitled to reject the expert testimony upon

11

which plaintiff had relied to establish the positive and negative criteria, the Board had done so unreasonably and in the absence of any competent evidence contradicting plaintiff's experts' testimony. The court concluded plaintiff's evidence addressed to the positive and negative criteria had been so overwhelming that it was unnecessary to remand the application to the Board for it to further supplement the sparse reasons it had set forth in the resolution denying the application.

The court also found the Board's resolution included only "limited findings as to the positive criteria" under N.J.S.A. 40:55D-70(d). Indeed, the resolution included only the conclusory finding plaintiff had failed to satisfy the positive criteria.

Nonetheless, based on its review of the record presented to the Board, the court found it could not be "reasonably debat[ed]" that plaintiff had satisfied the positive criteria which, under Coventry Square, required proof "the site proposed for the conditional use, in the context of the applicant's proposed site plan, continues to be an appropriate site for the conditional use notwithstanding the deviations from one or more conditions imposed by the ordinance" and "the non-compliance with conditions does not affect the suitability of the site for the

12

conditional use." 138 N.J. at 298-99; see generally Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment of W. Windsor Twp., 172 N.J. 75, 83 (2002).

On appeal, the Board concedes it made only "limited findings as to the positive criteria." Moreover, the Board does not argue the court erred by finding plaintiff had presented sufficient evidence establishing the positive criteria. The Board therefore has abandoned any claim the court erred by finding plaintiff's evidence satisfied the positive criteria for the requested variances. See Drinker Biddle & Reath LLP v. N.J. Dep't of Law & Pub. Safety, 421 N.J. Super. 489, 496 n.5 (App. Div. 2011) (explaining an issue not briefed on appeal is deemed abandoned). As a result, we discern no basis to reverse the court's determination plaintiff established the positive criteria for the requested variances, and we focus our attention on plaintiff's claim the court erred by finding plaintiff had also presented overwhelming evidence satisfying the negative criteria.

The court addressed the negative criteria, explaining that to sustain its denial of the application, the Board was required in its resolution to "make specific findings of fact and conclusions – based on substantial credible evidence in the record – that" plaintiff had "failed to satisfy both prongs of the

negative criteria."[3]  The Board's resolution did not include detailed findings concerning the first prong of the negative criteria—that the requested variances could be granted "without substantial detriment to the public good."  Coventry Square, 138 N.J. at 299.  The resolution included only conclusory assertions plaintiff had failed to satisfy the first prong of the negative criteria, finding the billboard's proposed "setbacks, height requirements, lighting and operation hours made the use significantly negative for the site and the technology presented failed to convince that there would be no light pollution," the location of billboard "made it unsuitable for the site where the residents would be subjected to glare," and "[t]he size and intensity of the project would harm the quality of the life for the residents and the commercial properties adjacent to the sign."

The court determined the Board had failed to make sufficiently detailed findings of fact supporting its conclusion plaintiff failed to satisfy the first prong

---

[3]  We reject the court's suggestion the Board was required to find plaintiff had failed to satisfy both prongs of the negative criteria to properly deny plaintiff's application.  That is not the case.  To establish an entitlement to a conditional-use variance and associated variances, the applicant must present evidence establishing the positive criteria and both prongs of the negative criteria.  Coventry Square, 138 N.J. at 285; N.J.S.A. 40:55D-70(d).  To properly deny the application, the Board therefore needed only to properly find plaintiff had failed to satisfy its burden of proving the positive criteria or either prong of the negative criteria.

of the negative criteria, but the court reasoned the Board's failure did not require a remand for further findings. Instead, based on its independent review of the evidence, the court concluded the Board "could not substantiate a finding that" plaintiff had failed to satisfy the first prong of the negative criteria and, for that reason, a remand for further findings by the Board was unnecessary.

The court found plaintiff's witnesses, including its experts, and evidence had established the residents in the residential neighborhood adjacent to the L-I zone would not see any light or suffer any glare from the billboard's digital displays because of the billboard's location, the manner in which the billboard was designed and would be constructed, and the technology that restricted the cone of light emanating from the billboard. The court further noted that no contrary competent evidence had been presented, the testimony of the witnesses who had testified against the application was insufficient to undermine plaintiff's evidence, and the testimony and evidence had therefore established the proposed billboard could be constructed "without substantial detriment to the public good."

The court also addressed the second prong of the negative criteria, finding the Board had not made "any finding whatsoever as to if, or whether" a grant of the variance relief sought could be granted without impairing the intent and

15

purpose of the zone plan and zoning ordinance.  However, contrary to the court's finding, the Board's resolution had addressed the second prong of the negative criteria, albeit in a cursory manner, stating plaintiff "had not demonstrated that the requested relief could be granted without substantial detriment to the zone plan, zoning ordinance, and the surrounding area for" the site.

The Board's conclusory finding as to the second prong of the negative criteria is untethered to any findings of fact.  And, on appeal, the Board concedes it did not make adequate findings concerning the second prong of the negative criteria, claiming it had found it unnecessary to do so because it had otherwise denied the application based on its determination plaintiff had failed to satisfy the positive criteria and the first prong of the negative criteria.

In the absence of any findings of fact supporting the Board's determination plaintiff did not satisfy the second prong of the negative criteria, the court considered the record before the Board and determined plaintiff had presented overwhelming and unrebutted evidence satisfying its burden.  In doing so, the court first found the ordinance from which plaintiff sought the variances was presumptively "unreasonable and invalid" under N.J.S.A. 40:55D-89.1, which provides that "[t]he absence of the adoption by the planning board of a reexamination report pursuant to [N.J.S.A. 40:55D-89] shall constitute a

16

rebuttable presumption that the municipal development regulations are no longer reasonable."[4]

The court took judicial notice that the Edison ordinance from which plaintiff sought the variances had been adopted in 2007 and that "[b]y the time" the Board had voted to deny plaintiff's application on March 16, 2021, and adopted its April 27, 2021 resolution, "there had been no Master Plan Reexamination conducted within the intervening ten-year period." The court concluded that because the planning board had failed to reexamine the Township's Master Plan during the ten years prior to the filing of plaintiff's variance application, the ordinance—Edison Township Ordinance 37-62.11b.3(a) and (b)—establishing the standards for the L-I zone from which plaintiff had sought the variances was "presumptively unreasonable and invalid" as a matter of law under N.J.S.A. 40:55D-89.1.

The court therefore found the Board was not bound by the ordinance, concluding "the Board was not limited by the specific requirements of the

---

[4] In pertinent part, N.J.S.A. 40:55D-89 provides that the governing body of a municipality "shall, at least every [ten] years, provide for a general reexamination of its master plan and development regulations by the planning board, which shall prepare and adopt by resolution a report on the findings of such reexamination," and "[a] reexamination shall be completed at least once every 10 years from the previous examination." The statute otherwise details the requirements for a reexamination report. N.J.S.A. 40:55D-89(a) to (f).

[ordinance] or . . . the conditions of the conditional use" imposed by the ordinance's plain language. The court further reasoned that because the ordinance was presumptively unreasonable and invalid under N.J.S.A. 40:55D-89.1, and digital signs did not exist when the ordinance had been adopted in 2007, the Board should have relied on the standards for such signs found in the New Jersey Roadside Sign Control and Outdoor Advertising Act (the Act), N.J.S.A. 27:5-5 to -26, and the NJDOT's attendant regulations, N.J.A.C. 16:41C-1.1 to -12., in its assessment of plaintiff's proofs concerning the second prong of the negative criteria.

The court concluded that because the billboard satisfied the requirements of the Act and the regulations and the New Jersey Department of Transportation had issued a permit for construction of the billboard, plaintiff had satisfied its burden under the second prong of the negative criteria such that plaintiff was entitled to the variances under an ordinance the court had deemed presumptively invalid. Based on that finding, the court also determined a remand to the Board for further fact-finding was unnecessary.

The court also found the Board had erred by rejecting plaintiff's application for the height and bulk variances, finding they were also supported by plaintiff's evidence satisfying the positive and negative criteria. The court

further rejected the Board's finding plaintiff had not demonstrated the variances could be granted without substantial detriment to the area surrounding the proposed billboard site, concluding the record was "completely bereft of any testimony to support such a finding."

The court recognized the Board was not obligated to accept the testimony of plaintiff's experts but explained the Board's rejection of the testimony could not be properly based on the "bare allegations or unsubstantiated belief[s]" of the witnesses who had testified in opposition to the application. The court noted the testimony of the objectors and any comments made by the Board members during the hearing did not support the Board's rejection of the experts' testimony and therefore the Board's decision was arbitrary, capricious, and unreasonable. See, e.g., Cell S., 172 N.J. at 88 (alteration in original) ("Proof of adverse effect on adjacent properties and on the municipal land use plan . . . generally will require expert testimony." (quoting Smart SMR of N.Y., Inc. v. Fair Lawn Bd. of Adjustment, 152 N.J. 309, 316 (1998))).

In sum, the court concluded the Board had offered no basis grounded in the evidence supporting its rejection of what the court had determined was the overwhelming evidence establishing the positive and negative criteria. The court found the Board had acted unreasonably, arbitrarily, and capriciously "[b]y

turning a blind eye and giving short shrift to . . . [p]laintiff's experts' unrebutted testimony," and by denying the variances "in spite of preponderating, uncontroverted and substantial credible evidence" establishing plaintiff's satisfaction of the statutory criteria.

The court reversed the Board's denial of the application and remanded for the Board's entry of a resolution approving the application and granting the requested variances subject to any conditions and restrictions agreed upon by the parties during the Board hearing. This appeal followed.

## II.

We conduct a de novo review of an order affirming or reversing a zoning board's resolution granting or denying a variance application. Cohen v. Bd. of Adjustment, 396 N.J. Super. 608, 614-15 (App. Div. 2007). In doing so, we recognize a court's review of a zoning board's decision is limited. Smart SMR, 152 N.J. at 327. Zoning board decisions constitute quasi-judicial actions of municipal administrative agencies, S. Cent. 25, LLC v. Bd. of City of Union City, 460 N.J. Super. 446, 464 (App. Div. 2019), and are presumptively valid, Cell S., 172 N.J. at 81. "[B]ecause of their peculiar knowledge of local conditions," zoning boards "must be allowed wide latitude in the exercise of delegated discretion" and "[c]ourts cannot substitute an independent judgment

for that of the boards in areas of factual disputes; neither will [courts] exercise anew the original jurisdiction of such boards or trespass on their administrative work." Kramer v. Bd. of Adjustment, 45 N.J. 268, 296 (1965); see also N.Y. SMSA, 370 N.J. Super. at 331.

"A board's function is to make factual determinations based on the record and decide whether the applicant has satisfied the statutory criteria for a variance." Baghdikian v. Bd. of Adjustment of Borough of Ramsey, 247 N.J. Super. 45, 49 (App. Div. 1991). "[A]n overriding principle governing judicial review of variance decisions by boards of adjustment is that, assuming an adequate basis in the record for a board's conclusions, deference to the judgment of local zoning boards ordinarily is appropriate." Lang v. Zoning Bd. of Adjustment of Borough of N. Caldwell, 160 N.J. 41, 58 (1999). "Even when doubt is entertained as to the wisdom of the action, or as to some part of it, there can be no judicial declaration of invalidity in the absence of clear abuse of discretion by the public agencies involved." Kramer, 45 N.J. at 296-97.

Setting aside a board's decision requires that a court find there was a "clear abuse of discretion." Cell S., 172 N.J. at 82 (citing Medical Realty Assocs. v. Bd. of Adjustment of Summit, 228 N.J. Super. 226, 233 (App. Div. 1988)). An abuse of discretion can be found if the party attacking the decision sustains its

burden of establishing the board's decision was "arbitrary, capricious, or unreasonable." Id. at 81 (quoting Medici v. BPR Co., 107 N.J. 1, 15 (1987)); see also Smart SMR, 152 N.J. at 327.

We give greater deference to a zoning board's decision where, as here, it denies a variance in preservation of a zoning plan. Nextel of N.Y., Inc. v. Borough of Englewood Cliffs Bd. of Adjustment, 361 N.J. Super. 22, 38 (App. Div. 2003). Where a zoning board has denied a variance, the applicant "has the heavy burden of proving that the evidence presented to the board was so overwhelmingly in favor of the applicant that the board's action can be said to be arbitrary, capricious or unreasonable." Medical Realty Assocs., 228 N.J. Super. at 233; see also Northeast Towers, Inc. v. Zoning Bd. of Adjustment of W. Paterson, 327 N.J. Super. 476, 494 (App. Div. 2000).

The Municipal Land Use Law, N.J.S.A. 40:50D-1 to -65, authorizes zoning boards to grant variances under defined circumstances. As noted, to establish entitlement to a conditional-use variance under N.J.S.A. 40:55D-70(d)(3), an applicant must prove "the site will accommodate the problems associated with the use even though the proposal does not comply with the conditions the ordinance established to address those problems," and "the variance can be granted 'without substantial detriment to the public good,'" and

"will not 'substantially impair the intent and purpose of the zone plan and zoning ordinance.'" Coventry Square, 138 N.J. at 299 (quoting N.J.S.A. 40:55D-70(d)).

"The standard for establishing the 'positive criteria'" under N.J.S.A. 40:55D-70(d) "is contingent on the type of variance at issue." Cell S., 172 N.J. at 83. For a conditional use variance under N.J.S.A. 40:44D-70(d)(3), the applicant satisfies the requirement of demonstrating special reasons—the positive criteria—by establishing "the site proposed for the conditional use, in the context of the applicant's proposed site plan, continues to be an appropriate site for the conditional use notwithstanding the deviations from one or more conditions imposed by ordinance." Coventry Square, 138 N.J. at 298.

As we have explained, the Board does not dispute that plaintiff's evidence satisfied the positive criteria. Instead, it claims the court erred by finding plaintiff satisfied the negative criteria and by failing to remand to allow it to state with more particularity its findings supporting its determination plaintiff had failed to satisfy the negative criteria.

To determine if an applicant has satisfied the "the first prong of the negative criteria, that the variance can be granted 'without substantial detriment to the public good,' N.J.S.A. 40:55D-7," a zoning board must "focus . . . on the effect on surrounding properties of the grant of the variance for the specific

deviations from the conditions imposed by the ordinance."  Id. at 299.  The board is required to "evaluate the impact of the proposed [conditional-]use variance upon the adjacent properties and determine whether or not it will cause such damage to the character of the neighborhood as to constitute 'substantial detriment to the public good.'"  Ibid. (quoting Medici, 107 N.J. at 22 n.12).

In its determination of an applicant's proofs as to the second prong of the negative criteria, "that the variance will not 'substantially impair the intent and purpose of the zone plan and zoning ordinance,' N.J.S.A. 40:55D-70(d)," a zoning board "must be satisfied that the grant of the conditional-use variance for the specific project at the designated site is reconcilable with the municipality's legislative determination that the condition should be imposed on all conditional uses in that zoning district."  Ibid.  Thus, satisfaction of the second prong of the negative criteria requires proof that the proposed variance "will not substantially impair the intent and purpose of the zone plan and zoning ordinance."  Meridian Quality Care, Inc. v. Bd. of Adjustment of the Twp. of Wall, 355 N.J. Super. 328, 337 (App. Div. 2002) (quoting N.J.S.A. 40:44D-70(d)).

N.J.S.A. 40:55D-10(g) requires that a zoning board "reduce each decision on an application to writing in the form of a resolution that includes findings of

fact and conclusions of law."[5] N.Y. SMSA, 370 N.J. Super. at 332. "The factual findings set forth in a resolution cannot consist of a mere recital of testimony or conclusory statements couched in statutory language." Id. at 332-33. A zoning board's "resolution must contain sufficient findings, based on the proofs submitted, to satisfy a reviewing court that the board has analyzed the master plan and zoning ordinance." Id. at 333. Where a variance is denied, the zoning board's factual findings "must demonstrate with reference to facts and testimony on the record . . . that the statutory requisites for the grant of a variance are absent." Cox & Koenig, N.J. Zoning & Land Use Administration § 19-7.2 (Gann, 2023).

A zoning board's resolution is the benchmark against which a decision granting or denying a variance is measured. CBS Outdoor, Inc. v. Borough of Lebanon Planning Bd./Bd. of Adjustment, 414 N.J. Super 563, 580 (App. Div. 2010). A resolution must "explain fully the basis on which the Board had acted, with ample reference to the record and the pertinent statutory standards." Commercial Realty & Res. Corp. v. First Atl. Props. Co., 122 N.J. 546, 566-67

---

[5] In pertinent part, N.J.S.A. 40:55-10(g) provides as follows: "The municipal agency shall include findings of fact and conclusions in each decision on any application for development and shall reduce the decision to writing." The findings and conclusions shall be provided through a resolution. N.J.S.A. 40:55-10(g)(1).

(1981) (internal citations omitted). A board's resolution "must contain sufficient findings, based on the proofs submitted, to satisfy a reviewing court that the board has analyzed the applicant's variance request in accordance with the statute and in light of the municipality's master plan and zoning ordinances." N.Y. SMSA, 370 N.J. Super. at 333.

Where a zoning board's decision is set forth in an inadequate resolution lacking appropriate fact finding, "the reviewing court has no way of knowing the basis for the board's decision" and, therefore, cannot conduct a proper review of the board's determination. Ibid. Although a remand for a board's reconsideration of its decision and for specific factual findings supporting its determination is sometimes necessary where a resolution is inadequate, Smith v. Fair Haven Zoning Bd. of Adjustment, 335 N.J. 111, 123 (App. Div. 2000), it is "not appropriate" where "the record clearly compels a reversal of [a] [b]oard's action," N.Y. SMSA, 370 N.J. at 335.

Guided by these standards, we consider the Board's resolution. By any measure, it is wholly inadequate. The resolution primarily consists of a recitation of the evidence and testimony presented to the Board. Then, in five short sentences, the Board offers its purported analysis of the evidence and sparsely states the reasons supporting its denial of plaintiff's application.

A-3954-21

The resolution is comprised of conclusory assertions concerning plaintiff's purported failure to satisfy the positive and negative criteria. The assertions are untethered to any analysis grounded in an application of the Coventry Square standards or any findings of fact supporting the Board's conclusions and determination. See Id. at 333. For example, the resolution states plaintiff failed to demonstrate the variance could be granted without substantial detriment to the zone plan and zoning ordinance, but it offers not a single factual finding, reference to the zone plan and ordinance, or analysis supporting that conclusion. Indeed, in its brief on appeal, counsel for the Board concedes the resolution does not include findings concerning the second prong of the negative criteria.

Additionally, the resolution states in conclusory fashion the billboard's "setbacks, height requirements, lighting, and operational hours made the use significantly negative for the site," but that conclusion is unaccompanied by any findings of fact or analysis under the zoning ordinance, the zone plan, or the Coventry Square standards. The resolution also states the "size and intensity" of the billboard "would harm the quality of life for the residents and commercial properties adjacent to the sign" but failed to provide a single finding of fact supporting that determination or explaining why that finding supports the Board's denial of the variance applications under the applicable legal standards.

The resolution includes only two vaguely-stated findings that arguably offer support for the Board's denial of the variances. The resolution explains the Board rejected as unconvincing plaintiff's evidence that the new technology plaintiff's experts testified would be incorporated into the digital billboard made it such that there would be "no light pollution" affecting the residential neighborhood adjacent to the L-I zone. And, consistent with that finding, the Board stated the location of the billboard "adjacent to a residential neighborhood made it unsuitable for the site where the residents would be subjected to glare."

Although thinly stated, those findings are clearly at the core of the Board's denial of the application. One of the primary issues during the hearing on plaintiff's application was whether and to what extent the large and elevated two-sided digital billboard, which would change its illuminated digital faces every eight seconds twenty-four hours each day, would adversely affect with associated glare and illumination the nearby residential neighborhood.

To be sure, plaintiff submitted evidence—expert testimony and otherwise—supporting a finding the digital-illuminated billboard would not produce light or glare adversely affecting the nearby residential neighborhood. But the evidence also established that at least some of the light- and glare-tampering technology about which plaintiff's experts testified was a new

28

prototype and, as stated in the resolution, the Board determined the "technology presented failed to convince there would be no light pollution" from the proposed ever-changing illuminated signs. That is, the Board was unpersuaded by the experts' testimony that the new technology would prevent the glare and illumination from the large digital signs that would otherwise be a detriment of the neighboring residences.

The Board's resolution also generally stated the "size and intensity of the" billboard "would harm the quality of life for the residents and the commercial properties adjacent to the sign." Again, this finding is not directly supported by any express findings in the resolution, but it is undisputed the billboard is of a substantial size—each face of the two-sided sign is 627 square feet, or two-and-one-half times the 250 square feet permitted under the ordinance, and the billboard's 110-foot height is more than seven times the fifteen-foot sign-height permitted under the ordinance. Yet, the Board's resolution does not make any specific findings related to size and intensity to which it makes reference, does not include any analysis of defendant's request for a height variance, N.J.S.A. 40:55D-10(d)(6), and fails to describe, assess, or analyze whatever purported facts supported its conclusion under the applicable legal standards. See generally Grubbs v. Slothower, 389 N.J. Super. 377, 388 (App. Div. 2007)

29

(finding the <u>Coventry Square</u> standard for the assessment of the statutory criteria for a conditional-use variance applies to an application for a height variance under N.J.S.A. 40:55D-70(d)(6)); <u>Grasso v. Borough of Spring Lake</u>, 375 N.J. 42, 52 (App. Div. 2004) (explaining the "special reasons necessary to establish a height variance must be tailored to the purpose for imposing height restrictions in the zoning ordinance").

Faced with an inadequate resolution, the court determined it was unnecessary to remand for the Board to make the findings it should have made in the first instance in support of its denial of the application. As noted, the court reasoned that the evidence so overwhelmingly established plaintiff had satisfied the positive and negative criteria for the requested variances that a remand was unnecessary. The court then reviewed the evidence and made its own findings of fact and conclusions of law approving the application based on its tacit determination that "no useful purpose would be served by remanding the matter." <u>Price v. Himeji</u>, 214 N.J. 263, 294 (2013).

In support of its appeal from the court's order, the Board argues that its resolution includes "a significant number of findings forming the basis of its denial" and, even if the resolution was inadequate, the court should have remanded for the Board to make additional findings. Having reviewed the

record de novo, we agree that a remand to allow the Board to supply a compliant resolution is appropriate and necessary to permit proper judicial review of the Board's denial of the requested variances.

We recognize that a remand on an appeal from a zoning board's decision is not always required where the board's resolution is inadequate. See, e.g., Price, 214 N.J. at 294. But, here, we cannot ignore that even the Board's summary findings make clear that it rejected the application because it was not persuaded by plaintiff's experts concerning the purported elimination of glare or "light pollution" from the large digital signs plaintiff plans to construct in close proximity to the residential neighborhood adjacent to the L-I zone. And, plaintiff does not claim that if the Board had properly rejected the expert testimony concerning the amount of glare and illumination that might be cast on the neighboring residential area, the application would have nonetheless had sufficient support in the other evidence to satisfy the two prongs of the negative criteria under the Coventry Square standard.

Plaintiff had the burden of proving its entitlement to the variances, Smart SMR, 152 N.J. at 323, and the Board was free to reject as not credible or unpersuasive the testimony of plaintiff's expert witnesses on which the application rested as not credible or unpersuasive, see S. Cent. 25, LLC, 460

31

N.J. Super. at 464-65 (explaining a zoning board's "powers include the 'judicial' role of deciding questions of credibility and whether to accept or reject testimony, expert or otherwise" (quoting Griggs v. Zoning Bd. of Adjustment of Princeton, 75 N.J. Super. 438, 446 (App. Div. 1962))); Allen v. Hopewell Twp. Zoning Bd. of Adjustment, 227 N.J. 574, 581 (App. Div. 1988) (noting "[i]t was within the province of the board of adjustment to accept or reject the opinions" of an expert witness).

Indeed, in Nextel of N.Y. Inc., we affirmed a board of adjustment's denial of a variance based on its rejection of expert testimony the board had found "not convincing," "conflicting," and "sometimes not believable." 361 N.J. Super. 22, 34 (App. Div. 2003). In that case, however, the board's resolution denying the variance explained its "reasons for rejecting [the expert's] testimony." Id. at 43; see also N.Y. SMSA, 370 N.J. Super. at 338 ("While a board may reject expert testimony, it may not do so unreasonably, based only upon bare allegations or unsubstantiated beliefs."). Thus, the Board was entitled to reject plaintiff's experts' testimony, but was required to state its basis for doing so in the resolution.

The Board's resolution does not detail the basis for its rejection of plaintiff's expert witnesses' testimony, but if the resolution made anything clear,

32

it was that the Board did not accept as credible or persuasive the evidence that was the focus of, and essential to, plaintiff's proofs in support of the application. More particularly, the evidence consisted of plaintiff's experts' testimony and related demonstrative evidence supporting its claim the large illuminated digital signs that comprised the billboards that were to be built at a height of 110 feet would not cast glare or illumination on the nearby residences. Plaintiff relied on that evidence to support its claim that it had satisfied the first prong of the negative criteria by establishing the requested variances could be granted "without substantial detriment to the public good." Coventry Square, 138 N.J. at 299.

The Board's generally-stated conclusion that it did not find plaintiff's experts' testimony persuasive is significant because the Board had "'the choice of accepting or rejecting the testimony of witnesses,'" and, "'[w]here reasonably made,'" its determination "'is conclusive on appeal.'" Kramer, 45 N.J. at 288 (quoting Reinauer Realty Corp. v. Nucera, 59 N.J. Super. 189, 201 (App. Div. 1960)); see also Nextel of N.Y., 361 N.J. Super. at 41. That is, if the Board properly rejected the testimony and evidence on reasonable grounds, much of the evidence on which plaintiff relied to sustain its burden under the negative criteria would have been conclusively rejected by the Board and could not be

considered by the court as supporting plaintiff's application on plaintiff's appeal from the denial of the application. And, in that event, the court would have been precluded from relying on that evidence in support of its determination plaintiff had so overwhelmingly sustained its burden that a remand to the Board was unnecessary.

Although the Board did not fulfill its obligation to provide the factual and evidentiary basis for its rejection of the experts' testimony, Bd. of Educ. of Clifton v. Zoning Bd. of Adjustment of Clifton, 409 N.J. Super. 389, 434 (App. Div. 2009), the resolution establishes the Board had rejected testimony and evidence that was important, and perhaps essential, to plaintiff's satisfaction of its burden of establishing the negative criteria for the requested variances. Given the significance of the Board's stated rejection of plaintiff's experts' testimony and evidence and the conclusive effect a proper rejection of the experts' testimony would on the consideration of the evidence, we are persuaded the Board's failure to detail its reasons in the resolution should not have provided an impetus to the court to consider and weigh the evidence on its own and, in doing so, ignore the Board's clearly stated, but not fully explained, rejection of plaintiff's experts' testimony.

In our view, the appropriate remedy for the Board's failure to include more detail supporting its determination plaintiff's evidence was not sufficiently persuasive is a remand for the Board to make further findings supporting its rejection of the testimony. It is not for the court to review the evidence and substitute its judgment concerning the credibility of plaintiff's witnesses or evidence. See, e.g., Kenwood Assocs. v. Bd. of Adjustment of Cty of Englewood, 141 N.J. Super. 1, 4 (App. Div. 1976) (explaining a judge "cannot substitute his [or her] own judgment for that of the municipal board invested with the power and duty to pass upon the application"). In its usurpation of the Board's role in making credibility determinations about witnesses' testimony and plaintiff's evidence, the court deprived the Board of an opportunity to supplement its findings of fact, credibility determinations, and analysis supporting its rejection of the testimony and deprived the trial court and this court of a full record permitting a proper determination as to whether the Board's rejection of the experts' testimony concerning the putative glare and illumination was reasonable and therefore conclusive. Kramer, 45 N.J. at 288; Bd. of Educ. of Clifton, 409 N.J. Super. at 434.

The court also erred by failing to remand to allow the Board to provide the findings supporting its determination plaintiff had failed to sustain its burden

under the second prong of the negative criteria. The court instead opted to review and assess the record before the Board and determined the evidence so overwhelmingly established the second prong of the criteria that a remand was not required. However, the court's analysis of the evidence concerning the second prong of the negative criteria was in error because it was based in part on incorrect conclusions of fact and law.

As we have noted, the court's assessment of plaintiff's proofs as to the second prong of the negative criteria was based on its finding that the Edison ordinance from which plaintiff sought the variances was "unreasonable and invalid" under N.J.S.A. 40:55D-89.1. The record before the Board, and on appeal, does not include any evidence concerning the alleged failure of the planning board to conduct a timely reexamination under the statute. The court filled the evidentiary void before the Board by taking judicial notice that the ordinance was adopted in 2007 and that "[b]y the time" the Board had voted to deny plaintiff's application on March 16, 2021, and adopt the resolution on April 27, 2021, "there had been no Master Plan Reexamination conducted within the intervening ten-year period." The court then concluded the ordinance was therefore "insufficient" and "presumptively unreasonable and invalid" under N.J.S.A. 40:55D-89.1.

A-3954-21

Based on those findings, the court concluded that "the Board was not limited by the specific requirements of the [ordinance] or . . . the conditions of the conditional use" imposed by the ordinance's plain language and reasoned that because the ordinance was presumptively unreasonable and invalid under N.J.S.A. 40:55D-89.1, and digital signs did not exist when the ordinance was adopted in 2007, the Board should have filled the purported absence of appropriate standards in the ordinance by applying the standards for such signs found in the Act and attendant NJDOT regulations.

One of the factual premises for the court's reasoning is incorrect. Contrary to the court's finding, digital signs existed in 2007 when Edison adopted the ordinance. As the Supreme Court explained E&J Equities, LLC v. Board of Adjustment of Township of Franklin, "[s]ince 1996, the New Jersey State Department of Transportation . . . has permitted off-premises digital billboards or multiple message signs on the interstate highway system." 226 N.J. 549, 561 (2016) (citation omitted). Thus, the court's determination that Edison could not have considered the possible presence of a digital billboard in the L-I zone—adjacent to an interstate highway—when the ordinance was enacted is incorrect.

Moreover, as noted, the court's determination as to the adequacy of plaintiff's proofs is founded on the incorrect premise that any purported failure

37

to perform a master plan reevaluation in accordance with N.J.S.A. 40:55D-89 rendered the ordinance invalid under N.J.S.A. 40:55D-89.1, such that the Board was required to ignore the ordinance's requirements and consider other statutory and regulatory standards in its assessment of the second prong of the negative criteria.

As we explained in Vidal v. Lisanti Foods, Inc., 292 N.J. Super. 555, 567 (App. Div. 1996), "N.J.S.A. 40:55D-89 and N.J.S.A. 40:55D-89.1 do not reflect a legislative intent to expand [a] board of adjustment's power to grant variances in the event that the governing body and planning board default in the performance of their statutory responsibilities."[6] But that is precisely what the court did here by deciding not to remand the matter for further findings by the Board and instead standing in the Board's stead, finding the ordinance unreasonable and invalid as a matter of law, and ordering the granting of the variances based on its consideration of the Act and regulations and without regard to the ordinance's plainly requirements and its part in Edison's zone plan.

---

[6] In Vidal, we noted that the effect of our holding was to overrule the suggestion in National Automobile Salvage Service v. Delran Township Board of Adjustment, 236 N.J. Super. 579, 582-83 (Law Div. 1989), that an ordinance that is presumptively unreasonable under N.J.S.A. 40:55D-89.1 "makes the existence of [a] board's jurisdiction to grant [a] variance more likely since the variance will have less impact upon a development plan which is unreasonable than it will upon one which is reasonable." Vidal, 292 N.J. Super. at 567, n.5.

The court also did not consider that N.J.S.A. 40:55D-89.1 creates only a "rebuttable presumption" that a zoning ordinance is "no longer reasonable" where there is an "absence of the adoption by the planning board of a reexamination report pursuant to" N.J.S.A. 40:55D-89.  By raising the issue for the first time on plaintiff's challenge to the Board's denial, effectively nullifying the ordinance as a basis for assessing plaintiff's proofs under the second prong of the negative criteria, and deciding plaintiff had sustained its burden under the second prong of the negative criteria on that basis, the court deprived the Board of any opportunity to address or rebut the purported presumption in the first instance.

As we have noted, the Board addressed the negative criteria, albeit too generally, and to the extent any presumptions arising under N.J.S.A. 40:55D-89.1 should have been addressed but were not, the court should have remanded to the Board to make the appropriate findings addressing the presumption and its determination as to the second prong of the negative criteria based on all the evidence and arguments presented.

We also observe that the court's reliance on the Act and the regulations as effectively pre-empting the ordinance appears undermined by the record.  The permit issued by the NJDOT to plaintiff approving the erection of the billboard

39

was expressly conditional on plaintiff receiving "all relevant local approvals required by the municipality." Thus, under the plain language of the NJDOT permit, plaintiff was required to comply with the ordinance and obtain all necessary approvals—including any necessary variances—required under the ordinance. The Act and the NJDOT and the regulations therefore supplemented, and did not supplant, the requirements of the ordinance.

The court should have provided the Board an opportunity to address the planning board's purported failure to timely re-examine the master plan, the rebuttable presumption, if any, arising under N.J.S.A. 40:55D-89.1, and the putative effect of that failure on the Board's analysis on the negative criteria. In doing so, the trial court and this court would have a more complete record on which to assess the validity of the Board's decision.

In sum, we affirm the court's unchallenged determination plaintiff presented sufficient evidence satisfying the positive criteria under the Coventry Square standard for the variances sought. We vacate the court's determination plaintiff satisfied the negative criteria and remand to the Board for it to reconsider the application based on the evidence in the existing record, which may be supplemented only to the extent required to address or rebut any purported presumption of invalidity of the ordinance under N.J.S.A. 40:55D-

89.1. The Board shall permit the parties to make such additional arguments as deemed appropriate, and it shall vote again on the application and issue a resolution in accordance with N.J.S.A. 40:55D-10(g) detailing its factual findings and conclusions of law supporting its decision as to the variances requested.

Our decision to remand to the Board shall not be considered as an expression of opinion on the merits of plaintiff's application or the Board's prior decision to deny the application. And our decision does not require that the Board deny the application again. The Board shall consider the application anew, bound by its concession plaintiff had sustained its burden of proving the positive criteria, and decide the application based on the evidence in the existing record as supplemented as permitted in this decision. See Smith v. Fair Haven Zoning Bd. of Adjustment, 335 N.J. Super. 111, 123 (App. Div. 2000).

We therefore vacate the court's order and remanded to the Board for further proceedings consistent with this opinion.

Vacated and remanded to the Board for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3954-21